
BRADISH *against* GIBBS and others.

A *feme covert* may execute, by a will in favour of her husband, a power given or reserved to her, while sole, over her real estate.

Where the wife, before marriage, entered into an *agreement* with her intended husband, that she should have power, during the coverture, to dispose of her real estate, by will; and she, afterwards, devised the whole of her estate to her husband, this was held a valid disposition of her estate *in equity;* and the heirs at law of the wife were decreed to convey the *legal* estate to the devisee.

In *April*, 1814, the plaintiff, and *Helen Elizabeth Gibbs*, *November 9th* entered into a marriage contract; she being seised, in her own right, of a valuable real and personal estate, which the plaintiff agreed should be at her disposal, notwithstanding the contemplated marriage. Articles of agreement were thereupon made, and executed between them, under seal, dated the 20th of *April*, 1814, reciting the treaty of marriage to be solemnized, and that she was possessed, in her own right, of certain *personal* estate, described in a schedule thereunto annexed, and might become entitled to other personal property, not mentioned; and that, whereas, by the marriage, the personal property would vest in the plaintiff, and in case of his decease, intestate, would go to his heirs; and that, by the marriage treaty, it was agreed, that in case of the death of the plaintiff, leaving her his survivor, without issue, the said personal property should vest in her absolutely, in like manner as if no marriage had taken place; in order, therefore, to carry the said treaty of marriage into effect, the plaintiff, in consideration of the marriage, covenanted with the said *H. E. Gibbs*, that if the marriage should take place, and the plaintiff should die, leaving his wife living, without issue by her, at his death, then all the personal property described in the schedule, and personal property not mentioned therein, of which the plaintiff, by virtue of the

marriage, might become possessed, in right of his wife, either by gift, descent, purchase, &c. should on his decease, vest in her, absolutely, in fee, &c. The plaintiff farther covenanted, that if any part, or the whole, of the real estate of which she was then seised, and which was mentioned and described in the said schedule, should be sold during the coverture, the proceeds of such sale, or the amount thereof, should be re-invested in other real estate, in her name, and for her use; and that she should, at all times, during her coverture, have full power, effectually to dispose of, according to her pleasure, *by will*, or by any instrument in writing, in the nature of, and purporting to be so, all such real estate as she might at the time be seised of in her own right, either jointly or severally; and to that end, the will, or any instrument in writing purporting to be such, of her, though made and executed during the coverture, should be equally valid, as if she, at the time of making thereof, was a *feme sole ;* and that the plaintiff, his heirs, executors, &c. would do all such acts as might be needful and proper, in law or equity, on his or their part, for carrying the same into effect.

The real estate mentioned in the schedule was described as a lot and house in the city of *New-York*, purchased of *J. Shaw*, and which cost 23,250 dollars. The parties, after the execution of the contract, were married, on the 21st of *April*, 1814, and lived together until her death, in *April*, 1816.

A contract had been entered into, in *February*, 1814, by and on behalf of *H. E. G.*, with *J. S.*, for the purchase from him of the house and lot above mentioned; the sum of 750 dollars was paid as part of the purchase, and the residue was agreed to be paid on the delivery of the deed, on, or before, the 21st of *May*, 1814; and the balance being 22,500 dollars, was paid by the plaintiff, after the marriage, out of the personal estate of his wife, on the 29th

of *April*, 1814; and the deed which had been previously executed by *J. S.* to *H. E. G.*, and delivered as an escrow to *C. W.*, was delivered by him. The plaintiff and his wife took possession, afterwards, and occupied the premises until her death; and the plaintiff has since continued in possession, having, during the life of his wife, expended large sums in improvements.

In *August*, 1815, the wife of the plaintiff, in pursuance of the power reserved to her by the articles of agreement made her will in such a manner, as would have passed all her real estate, had she she been a *feme sole*.The will, in substance, was, that she revoked all former wills, and gave and devised to the plaintiff and his heirs, for ever, all her estate of what nature, or kind soever, without reserve, whether real, personal, or mixed, or in possession, reversion, or remainder, and appointed the plaintiff her sole executor. The testatrix, died without issue, on the 7th of *April*, 1816, leaving the said will unrevoked, being then seised of the house and lot in question, leaving two brothers and three sisters, her heirs at law. One of the sisters, afterwards, died, on the 13th of *January*, 1817. The bill of the plaintiff prayed, that the defendants, who are the two brothers and sisters of his deceased wife, should be decreed to execute a conveyance to him of the legal estate in the said house and lot.

The answer of the defendants admitted the facts stated in the bill, but denied that the wife of the plaintiff had *adequate power* to dispose of her real estate *in equity*, by will, so as to vest the title in equity in her husband; and they averred, that the will did not operate in the *nature of an appointment* to vest the equitable title in the plaintiff; and that the will being made during coverture, and in favour of the husband, was void, as to the house and lot, both at law and in equity.

On the argument of the cause three points were raised for the consideration of the court: 1. That the power re-

served to Mrs. *B.* by the ante-nuptial contract was executed in equity, by the instrument purporting to be her last will; and that the plaintiff was, therefore, entitled to a conveyance from her heirs at law, of the legal estate, according to the prayer of the bill.

2. As the real estate in question was paid for out of the personal estate of Mrs. *B.*, it may be considered in equity, as personal estate; and, if so, her will would be a valid disposition of it.

3. That, at all events, the plaintiff was entitled to be reimbursed the amount he had expended on the real estate in repairs and improvements.

The cause having been decided on the first point, it is unnecessary to state the arguments of counsel on the others.

*Wells*, for the plaintiff, contended, that if the real estate in question had been conveyed by Miss *G.* to trustees, before her marriage, and the plaintiff, being a party to the deed, had entered into covenants similar to those contained in the articles of agreement, no doubt could be entertained of the power of Mrs. *B.* to dispose of her real and personal estate, in the same manner, as if she had been a *feme sole*; and that the will executed by her would be a valid disposition of both. (*Wright* v. *Englefield, Amb.* 468. S. C. *on Appeal,* 1 *Bro. P. C.* 503, 504. *Tomlin's Ed.* 6 *Bro. P. C.* 156. *Wright* v. *Cadogan. Peacock* v. *Monk,* 2 *Vesey,* 190.) Lord *Hardwicke,* it is true, in the case of *Peacock* v. *Monk,* whilst he admitted the right of a *feme covert* to dispose of her beneficial interest in her real estate vested in trustees, under a power reserved to her for that purpose, expressed strong doubts whether she could do so, under an agreement merely between her husband and herself, before marriage, where the legal estate continued in her. In a subsequent case, however, Lord *Camden* decided, that it made no

difference, whether the estate had been conveyed to trustees, or remained a legal estate in the wife after marriage; but that in both cases, the power would be equally well executed in equity. (*Rippon* v. *Dowding, Amb.* 565.) Lord *Kenyon*, also, in speaking of Lord *Hardwicke's* doubts, says, "that which was then considered as a doubt no longer remains." (*Doe* v. *Staple*, 2 *Term Rep.* 695.) The rule laid down in *Rippon* v. *Dowding* has, also, met the unanimous approbation of the supreme court of *Pennsylvania*. (*Barnes'* lessee v. *Irwin*, 2 *Dallas*, 199.) .

The rule is founded in good sense, and is supported by authority. If the legal estate of Mrs. *B.* had been vested in trustees, her will would have been good, as *an appointment*, and equity would have compelled the trustees to convey the real estate accordingly. Why, then, are not the heirs at law of Mrs. *B.* equally trustees, for the purpose of giving effect to the execution of the power reserved to her by the ante-nuptial contract, and equally under the control of a court of equity? In the language of Lord *Camden*, "the principle of determination is the same in both."

*Riggs*, contra. The will takes no notice of the power to make it, arising from the articles of agreement; and the court cannot intend that it was made in pursuance of the articles, unless it so appears from the will itself. A *will* which depends on such previous power for its validity, must refer to the power or the will is void. (*Andrews* v. *Emmet*, 2 *Bro. C. C.* 297. 2 *Hen. Bl.* 139. per *Heath*, J.) As the plaintiff does not pretend to have made a settlement on his wife, so as thereby, or in any other manner, to have become a purchaser of her fortune, he is to be viewed as a mere *volunteer*. According to the last resolution in the case of *Vane* v. *Fletcher*, (1 *P. Wms.* 352.) a mere *volunteer* is not to be assisted in a court of equity against the *heir at law.*

1818.

BRADISH
v.
GIBBS.

Again; the plaintiff claims the benefit of his own cove-nant, which, from the nature of it, and the nature of the case, could only enure to the benefit of some third person who might be her devisee. That the devisee of the wife, being a third person, might claim the benefit of the plain-tiff's covenant, so far as he had any estate to be effected by it, seems reasonable. As if the plaintiff had become *tenant by the curtesy* of the premises, and she had devised them to a third person, such devisee might call on the plaintiff in a court of equity, to convey as far as his interest and covenant extended. But that he should, himself, call on the *heirs at law*, for a conveyance, because he had cove-nanted that his wife might make a will, and that he would do every needful and proper act to give it validity, ap-pears to be a strange proposition, if not a legal solecism."

We contend, that the doctrine of the court of equity on this subject is, that the only method by which the *will* of a *feme covert* of her real estate can be made effectual, *even in equity*, in favour of a *volunteer*, is by her conveying her estate to a third person, previous to her marriage, in trust, for such person as she shall, by her will, made during co-verture, *appoint ;* or by raising a *use*, and reserving to herself *a power over it*, to be effectuated by such will. (*Peacock* v. *Monk*, 2 *Vesey*, 190.)

The counsel for the plaintiff, however, suppose, that the opinion of Lord *Hardwicke* in *Peacock* v. *Monk*, has been overruled by the subsequent cases of *Wright* v. *Engle-field*, and *Rippon* v. *Dowding*. In the first mentioned case, and in *Wright* v. *Cadogan*, the *legal estate* was in trustees, to whom it had been conveyed by the father of the *feme covert* who made the will. The equitable title descended on her while she was a widow. Before her second mar-riage, the agreement was made, upon the validity of which her will, made during coverture, depended. By that will she devised her *equitable estate* in the premises, to her hus-band for life, remainder to the sons of the marriage in tail

male, remainder to the daughters of the marriage in tail general. The bill was brought by the heir at law to have a conveyance of the legal estate from the trustees, who filed a cross-bill for directions to whom they should convey. In that case, the *feme* could not convey the estate to trustees, as that had already been done by her father. Any attempt to make such a conveyance, would have amounted merely to *a declaration of trust*, and it was held, that the articles before marriage, and her will, afterwards, were equivalent to such declaration. (Per Lord Ch. *Northington, Ambler*, 473.) Again; the provision made in that case, by the will of the *feme covert*, for children, was deemed a meritorious consideration, so that the devisees were not *mere volunteers ;* and that seems to be the ground on which the devise was supported. In the present case, there is no such consideration, and the plaintiff is a *mere volunteer*. What further distinguishes that case from the present is, that there the heir at law sought the aid of the court, to obtain the legal title. Here the plaintiff seeks the aid of the court to take the legal title from the heirs at law, in whom it is vested.

Lord *Northington*, (*Ambler*, 473.) refers to the case of *Bramhall* v. *Hall*, decided by himself a short time before ; and it appears, that the decision in that case was against the will, for want of a *meritorious consideration*. (*Ambler*, 467.) In the report of the case on appeal, *Wright* v. *Cadogan* and others, the counsel, in favor of the will urge the fact of a previous conveyance, and the *meritorious consideration*, in support of the devise, showing their opinion to be, that it could not be supported without such considerations.

As to the observation of Lord *Kenyon*, in *Doe* v. *Staple*, (2 *Term Rep.* 695.) on what was said by Lord *Hardwicke*, in *Peacock* v. *Monk*, it is apparent, that either Lord *Kenyon*'s observations have been misunderstood, and misreported, or that his lordship mistook the facts of the case to

1818.

BRADISH
v.
GIBBS.

**1818.**

BRADISH
v.
GIBBS.

which he referred. The heir at law, in that case, was not decreed to convey; for the legal estate was, at the time, oustanding in trustees, and the bill was filed by the heir to obtain a conveyance from the trustees: And Justice *Buller*, sitting in Chancery, in noticing the case referred to, points out the mistake of Lord *Kenyon*. (2 *Bro. C. C.* 386.

The case, therefore, of *Wright* v. *Englefield*, or *Wright* v. *Cadogan*, does not impair the doctrine of Lord *Hardwicke* in *Peacock* v. *Monk*, as applicable to the case now before the court.

In the case of *Rippon* v. *Dowding*, so much relied on by the plaintiff's counsel, the husband, before marriage, gave his intended wife a bond, empowering her during coverture, to dispose of her real estate, by *deed*, or by will; and during coverture, she made a will devising the estate to her *younger children*, who, afterwards, filed a bill against the heir at law, for a conveyance, and obtained a decree. Lord *Camden* observed, it was a mistake to call it a question between *volunteers;* that the wife might have compelled the husband to join with her in a conveyance by fine, during coverture. There was, also, in that case, a *meritorious consideration*, the provision for *younger* children; and stress is laid on the power to dispose *by deed*, as taking the case out of the general rule as to a power of disposition by a *feme covert*, by will only.

In the case of *Barnes* v. *Erwin and others*, (2 *Dallas*, 199.) there was an ante-nuptial agreement between the husband and wife, and a *trustee* for her; and she was empowered to dispose of her real estate by *deed* or *will*. There were no children by the marriage. The wife, during coverture, made a will, authorizing the executors to sell the estate, and devised the proceeds in legacies, one of which was to the heir at law, and the residue was given to her *nephews, who were her nearest relations*, which furnished the *meritorious consideration* to sustain the equity. The chief justice

makes it one of the grounds of his judgment, "*that the devise was not to the husband, nor to his relations, but among the wife's nearest of kin ;*" clearly implying that a devise to the *husband* could not have been supported.

The case of *Doe* v. *Staple*, (2 *Term Rep.* 684.) which has also been cited, came, afterwards, into the court of Chancery for decision, under the name of *Hodsden* v. *Lloyd*, (2 *Bro. C. C.* 534.) and in delivering his judgment, Lord *Thurlow* stated the rule to be, " That with regard to chattels, both real and personal, the husband, by contract anterior to marriage, resting only in agreement, may authorize his wife to make a will; but in order to make a will of real estate, she must part with the legal estate to trustees, for, by agreement, while resting in agreement only, he cannot bind the heirs, but can only bind himself, and the legal estate ought to be conveyed by legal conveyances." In *Fettiplace* v. *Gorges*, (3 *Bro. C. C.* 8. 10.) Lord Chancellor *Thurlow* says, " the case of *Peacock* v. *Monk*, supposes that there may be such an agreement as will bind the heir ;"—" although when the wife makes a voluntary disposition against the heir, it cannot be carried into execution. But with respect to her personal property her disposition is good." It is said, in *Milnes* v. *Busk*, (2 *Vesey*, jun. 488.) that a disposition, by a *feme covert*, in favour of a *husband*, will not be countenanced by a court of equity, on account of the undue influence to which she is exposed.

It would seem to be the opinion of Mr. *Maddock*, in his late work, (1 *Madd. Ch.* 374, 5.) that the true doctrine on this subject is contained in the cases of *Peacock* v. *Monk*, *Hodsden* v. *Lloyd*, and *Fettiplace* v. *Gorges*, as applicable to cases like the present; and that the cases of *Wright* v. *Englefield*, or *Wright* v. *Cadogan*, and *Rippon* v. *Dowding*, are only exceptions to the rule, founded on the peculiar circumstances of the case, and supported by a *meritorious consideration*.

1818.

RRADISH
v.
GIBBS.

The plaintiff's title is defective on another ground, though it is rather a formal one. As the plaintiff claims under a will, said to be made by his wife, pursuant to a power, until this will is *exhibited and proved as such*, nothing can be claimed under it. (1 *Madd. Ch.* 337. 2 *Atk.* 48. 3 *Atk.* 156. 160. 162.)

*Wells*, in reply, insisted, that the plaintiff, in this case, was not a *volunteer ;* and that *marriage* was as much a valuable consideration as *money.* The appointee does not take under the power, but under the deed, or instrument, creating the power.. In the language of the books, he is in under the original deed. (4 *Cruise's Dig.* 233—235.) The deed was the ante-nuptial contract. It is, in effect, the same as if there had been a technical and formal marriage settlement, by which it is admitted, that Miss *G.* might have limited her whole estate to her husband, in case of her death without children.. The *marriage* would be the valuable consideration, on the part of the husband, though he made no settlement on his wife. In both cases, he must claim under a contract made in contemplation of marriage, the consummation of which forms a valuable consideration, and excludes the notion of his being a volunteer. In *Rippon* v. *Dowding*, the parties claiming the *benefit of the appointment* under the marriage settlement, were called by the counsel volunteers; but Lord Camden said it was " a mistake to call them volunteers."

Even Lord *Hardwicke,* in *Peacock* v. *Monk*, when expressing his doubts whether a mere agreement between the husband and wife, before marriage, by which the wife was to dispose of her real estate, would bind the heir, suggests, that there was one way in which such an agreement might bind the heir. If, says he, the agreement would enable the wife to come into a court of equity, after marriage, to compel the husband to carry it into effect, by a proper conveyance, "the question might be,

whether the heir at law is not to be bound by the consequence of that agreement." This suggestion of Lord *H.* is adopted by Lord *Camden,* in *Rippon* v. *Dowding,* and who rests his opinion on that very ground. "The agreement," says he, "was made on marriage, and the wife might have compelled her husband to join with her in a fine." And Chief Justice *M'Kean,* in *Barnes' lessee,* v. *Irwin,* says the same thing; and he adds that it was an agreement fair and lawful, and founded on a valuable and meritorious consideration.

This is, then, such an agreement as a court of equity will enforce. The plaintiff, however, is entitled to the conveyance, not only on the ground of a valuable consideration, but, also, of a meritorious consideration. The counsel for the defendant seems to suppose, that the consideration of an appointment can be meritorious only where children, or relations, at least, are its objects.— Yet, in judgment of law, the husband is nearest of kin to his wife. Cases may arise which may excite suspicion of improper influence; as where a wife, in the execution of a power, should devise the whole of her estate to her husband, to the exclusion of her children; and it is to such cases that the observations of Lord *Loughborough* in *Milnes* v. *Busk,* are to be applied; and which were intended to impose some qualification on the doctrine laid down by the counsel in argument, that a *feme covert,* with a power reserved over her separate property, was to be considered, in every respect, as a *feme sole.* *Meritorious* considerations are not known in law, as forming a distinct class from those which are valuable, or which arise from natural love or affection. They can mean nothing more than that they are such as are, in themselves, just and agreeable to moral sense, and as having a natural fitness and propriety. Can any thing be more fit or proper than that a wife should provide for a husband whom she loves, and whom her death might, otherwise, leave destitute, when

1818.

BRADISH
v.
GIBBS.

there are no children to interfere with the exercise of her undivided affection? In *Bramhall* v. *Hall*, in which Lord *Northington* says, (*Wright* v. *Englefield*, *Amb.* 473.) "he would not grant the relief, because there was no meritorious consideration," the wife had made provision for an illegitimate child, at the expense of the lawful heir. In *Wright* v. *Cadogan*, the husband took, under the wife's appointment, a life estate, and no objection was made to it, on the ground that the consideration was not meritorious. The law on this subject is, in truth, broad and unqualified: Whoever is capable of taking an estate by a common law conveyance, may be an appointee. (4 *Cruise's Dig.* 241. s. 33.) If the husband is an exception to this rule, it ought clearly to be shown by some adjudged case; arguments of counsel, or inferences from the *dicta* of judges, afford too slender grounds for the exclusion of a whole class of persons from rights to which they would otherwise be entitled. There is nothing in the work of Mr. *Maddock* referred to, (1 *Madd. Eq.* 374, 375.) which can justify the conclusion drawn by the opposite counsel; when, in his note, he refers to *Hodsden* v. *Lloyd*, and *Fettiplace* v. *Gorges*, he adds, *but see* *Rippon* v. *Dowding*, &c. And Mr. *Powell*, in his notes to *Wood's Conveyancing*, (vol. 2. p. 6. *Dub.* ed.) considers the case of *Rippon* v. *Dowding*, as having settled the law on the subject.

Again; the ante-nuptial contract in this case, was executed in duplicate, by each of the parties, under seal. It is, therefore, technically, a *deed*. Why is it not, therefore, equivalent to a covenant on the part of Miss *G.*, with the consent of her intended husband, to stand seised of her real estate, to such uses, as she should, by her last will, appoint? It is admitted, that the will or appointment of a *feme covert* of her real estate, would be effectual, even in favour of a *volunteer*, if, previous to her marriage, a *use* had been raised, over which she had reserved a power. Now, to raise such a use, it is not requisite that the estate should

be conveyed to a third person. It is equally raised by a covenant to stand seised of the property to such uses as she might, during coverture, appoint. In *Doe* v. *Staples*, the agreement before marriage was not under seal, for which reason Lord *Kenyon says*, it could not be considered as a covenant to stand seised to uses; leaving it to be inferred, that if it had been a *deed*, it might be such a covenant. So, Chief Justice *M'Kean*, in the case cited from *Dallas*, says, why may not the wife's articles of agreement, or deed of 1774, be considered as a covenant to stand seised of her real estate, for she was therein specially mentioned, and also for the use of her will or appointment? Marriage which tends to join blood, is one of the considerations held sufficient to validate such a conveyance.

It has been suggested, that as the will does not refer to the power, it is not valid. If this objection deserves a serious answer, it is sufficient to refer to the case of *Andrews* v. *Emmot*, (2 *Bro. C. C.* 303.) and the opinion of *Heath*, J., in *Buckland* v. *Barton*, (2 *H. Bl.* 139.  6 *Co.* 17. *b.* 8 *Term. Rep.* 118.)

As to the *formal* objection, it is enough to say, that the will is stated in the pleadings, and made an exhibit in the cause, with the *consent* of the solicitors of the parties, that it should be read at the hearing, in the same manner as if it had been duly proved.

The objection that the plaintiff is claiming the benefit of his own covenant against the heirs, who are third persons, cannot deserve a moments consideration, if the reason, nature, and object of the thing is understood. The same objection might equally be made, if trustees had been interposed.

THE CHANCELLOR. The question in this case is, whether the plaintiff by reason of the ante-nuptial agreement, and the subsequent will, is entitled to the aid of this court, to

*1818.*

BRADISH
v.
GIBBS.

1818.

BRADISH
v.
GIBBS.

compel the defendants who are the heirs at law of the wife, and upon whom the legal title to the premises descended, to convey the same to him.

I shall confine myself to the consideration of this important point, and as my conclusion will be in favour of the plaintiff, the discussion of the subordinate points will become unnecessary.

This is a dry question resting entirely on the technical rules of equitable jurisprudence; and I shall be obliged to examine minutely the authorities which are applicable to the subject, and shall endeavour to extract from them the true principle which ought to govern the case.

*A feme covert may execute by a will in favour of her husband, a power given to her, while sole, over her real estate.*

It is settled that a *feme covert* may execute by will, in favour of her husband, a power given to her while sole over her real estate.

In *Rich v. Beaumont,* (3 *Bro. P. C.* 308.) a treaty of marriage was concluded between the appellant and his intended wife. She then conveyed an estate of which she was seised, in trust, and with the declared intent to suffer a recovery, and that the recovery was to enure to the uses and upon the trusts declared; which were, among others that the wife should receive the rents and profits for her sole and separate use, for life, exclusive of her husband; and if she should leave issue then upon trust, that the trustees should convey to such issue, according to her direction by deed or will, and in default of issue, and in case she survived her mother, then to such uses and persons as she by deed or will should appoint. The recovery was suffered, and the marriage shortly after took place : the wife, during coverture, had a son, and survived her mother, and made her will in which among other dispositions, she gave to her only son the estate, with a reservation in favour of her husband of one half of the profits for life; she added, that if her son should die during his minority, without lawful issue, that she then devised all her estate to her husband, the appellant, in fee, and she

directed her trustees to convey her trust estate to such uses and purposes as were named in her will. She also gave all her personal estate to her husband, and made him the sole executor, and died.

Her son died in infancy, without issue, and the appellant apprehending that he was, by the will, entitled in equity to the fee of the estate, and to have a conveyance of the legal estate from the trustees, filed his bill, in 1724, against the heirs of his wife, and against the trustees, praying for a conveyance of the legal estate.

Lord Chancellor *King* dismissed the bill on the ground that the appellant's remedy, if any, was at law.

On appeal from this decree, it was a point assumed, that if the will was a good execution of the power, it was well executed in favour of the husband. The objection was, that the power was not well executed by will, because a *feme covert's* will of land was, by law, void. The decree was reversed, and an order made that the Court of Chancery take the opinion of the K. B., whether the will was a good appointment of the estate. It appears that the Court of Chancery ordered a case to be settled for the opinion of the K. B., and we have no further report of the case. But in *Hearle* v. *Greenbank*, (1 *Vesey*, 305.) and in *Peacock* v. *Monk*, (2 *Vesey*, 190.) Lord *Hardwicke* cited the case, to prove that a *feme covert*, might execute a power; and it was stated by the counsel *arguendo*, in *Marlborough* v. *Godolphin*, (2 *Vesey*, 64.) that in the K. B., where the case was sent, it was held a good appointment.

Though this case was by a very unusual step, referred to a court of law, yet we must understand the decision to have been, that the will was a good execution of the power *in equity*. The case was depending before an equity tribunal, to be decided upon equity principles; and Lord *Hardwicke*, in referring to that case, says, that the point had been so determined " in this court." At law.

such a will is void and in the very case of *Peacock* v. *Monk*, we find a decision of Ch. J. *Willes* cited, in which it was held, after a consultation with the other judges, that the husband could not give power to his wife to make a will of land. This determination meant, and it could only mean, that the devise of a *feme covert*, though made in pursuance of a power, was, equally with a will made without such power, void in a court of law.

This early case may, therefore, I apprehend, be relied on as a decisive authority in favour of the equitable title of the husband under his wife's will, executed in pursuance of a power created previous to her marriage, and that such a title may be enforced in equity against the heirs at law of the wife. The idea, that the husband is, in such a case, to be deemed a volunteer, seems to be without foundation; and though it was mentioned by the counsel for the respondents, the decision of the court of appeals shows that the objection did not apply.

But in that case the estate of the wife had been conveyed previous to her marriage to trustees, in trust for such persons as she should, by deed or will, appoint. The case is not, therefore, in all respects applicable to the one before me; and the doctrine in *Peacock* v. *Monk*, is supposed to be fatal to the present claim.

The principal question in *Peacock* v. *Monk*, (2 *Vesey*, 190.) was, as to the validity of the wife's will of land, purchased by her during the coverture; and the observations of Lord *Hardwicke*, on which great reliance is placed, were mere *dicta*, not necessarily arising out of that case, and so they were considered, afterwards, in the case which I shall presently mention, before Lord *Northington*. Lord *Hardwicke*, admitted, that "a woman, on her marriage, may take such a method as to prevent her real estate from going to her heir, but he doubted whether it could be done but either by way of trust, or of power over a use. Suppose, he says, a woman having a real estate be-

fore marriage, and either before or after marriage, by a proper conveyance, (if after marriage it must be by fine,) conveys to trustees, in trust for herself during coverture, to her separate use, and then in trust for such person as she by deed or will should appoint, and in default of appointment, to her heirs; she marries, and makes such an appointment. It is a good declaration of the trust, and this court will support that trust. So it may be done by her, by way of power over a use, as if she conveyed the estate to the use of herself for life, remainder to the use of such person as she by writing, &c. should appoint, and in default of such appointment, to her own use. This is a power reserved to her, and a *feme covert* can execute a power. But can a *feme covert* do this, so as to bar her heir, by a bare agreement, without doing any thing to alter the nature of the estate? Can a woman, having a real estate before marriage, in consideration of that marriage, enter into an agreement with her husband, that she may, by writing or by will, dispose of her real estate? This rests in agreement, and if she does it, though it may bind her husband from being tenant by the curtesy, that arises from his own agreement; but what is that to her heir?— She is a *feme covert*, under the disability of coverture, at the time of the act done, and if she attempts to make a will, the instrument is invalid. The only question that could arise, would be, whether such an agreement between her and her husband would not give her a right to come into equity after marriage, to compel her husband to carry it into execution, and to join with her in a fine to settle the estate on such trust, or to such and such uses. And if it is such an agreement as the court would decree to be carried further into execution by a proper conveyance, then the question may be, whether the heir is not to be bound by the consequences of that agreement."

It is then admitted, in this case, that a wife's will of land may be good in equity, by way of execution of a

1818.

BRADISH
v.
GIBBS.

power, provided the wife, previous to the marriage, conveyed the estate in trust, for purposes to be declared during her coverture, by deed or will; or, provided she previously raised a use, and reserved to herself a power over it. Lord *Hardwicke* only suggests doubts, whether a mere ante-nuptial agreement between husband and wife, while the legal estate remains in her, can give her such a power of disposition during coverture. It appears to me, that this doubt turns more upon a point of technical formality, than upon any solid ground of distinction, or real principle adapted to the interest of families, or apparent to the good sense and understanding of mankind. Why should not the heir himself, as well as the formal trustee standing behind him, be bound to give effect to the power of appointment reserved to the wife?

To enable a *feme covert*, to dispose of her real estate, in equity, it is not necessary that the legal estate should be vested in *trustees*; but a mere agreement entered into before marriage with her intended husband, that she should have power to dispose of her real estate, during coverture, will enable her to do so.

The case of *Bramhall* v. *Hall*, (*Amb.* 467.) first brought up the question upon such an agreement, without any conveyance by the wife.

Articles were entered into between *B.* and his intended wife, who was then a widow, seised of an estate in fee, by which he covenanted that she should have power by deed or will, to dispose of her estate, after her decease, to any person whatsoever, and that he would do any act to confirm it. After marriage, the wife, by lease and release, reciting the articles, conveyed her estate to trustees, after her death, to the use of her natural son for life, with remainders over. Lord *Northington* held, that the wife having the legal estate in her, the conveyance was not good to pass the estate, either as a conveyance, or an execution of the power.

This short and very imperfect note of the case, is all we have in the report, and it would seem from it, that the Chancellor put the objection on the ground of the legal estate not having been conveyed in trust, or to uses. But in the next case that followed it, and decided only a few months afterwards, Lord *Northington*, referring to this

1818.

BRADISH
v.
GIBBS.

case, says he was of opinion, that there was no merito-rious consideration. It was upon this ground, then, that the case was decided, and so it has been viewed by Mr. *Sugden*, in his accurate " *Treatise of Powers*," (p. 151.) It may then be considered as an authority in favour of an ap-pointment by a *feme covert* resting upon an ante-nuptial agreement, and without having, prior to the marriage, part-ed with the legal estate. If the power had been void, the Chancellor would not have recurred to the want of merit, (for so I understand him,) in respect to the object of the appointment or bounty. If the husband had been the grantee, no such objection could have been made, accord-ing to the case before Lord *King ;* and that case, in con-nexion with this, would seem to contain all the principles requisite to support the present bill.

But in the case of *Wright* v. *Englefield*, (*Amb.* 468. 6 *Bro. P. C.* 156. S. C.) which was decided in the same year, and which is more generally known and cited by the name of *Wright* v. *Cadogan*, Lord *Northington* gave the subject a deeper investigation.

In this case, marriage articles were entered into between the intended husband and wife ; and the instrument recited the intended marriage, and that it was agreed that the wife's existing estate, which was described to be a copy-hold estate of inheritance, and a rent charge for life, toge-ther with all such estate, real or personal, as might de-scend or come to her during coverture, should be to her separate use, and to be applied as she, by deed or will, should direct. The husband covenanted with *S.* and *B.* who were also parties to the same articles of marriage, that her property should be so subject to her disposition, and that he would execute any deed to secure the same to her separate application and use. A moiety of a trust in-heritance, of which the legal estate was then outstanding in the defendants as trustees, and of which she had, when the marriage articles were made, a trust of the reversion in fee, descended to her after the marriage, and the case

says, that she then became "entitled in fee simple pos-session" to her moiety, subject to the performance of certain trusts. She, afterwards, made her will, and under the power reserved, and to which she referred, she devised her moiety of the inheritance to trustees, to the use of her husband for life, remainder to the sons of the marriage in tail male, remainder to the daughters of the marriage in tail general, and in default of such issue, to her own right heirs. The plaintiff was her only son by a former husband, and the question was between him as her heir at law, and the second husband, and his surviving daughters, who all claimed by appointment under the will, and the marriage articles. He filed the bill to have a conveyance from the trustees, and they filed a cross bill for directions.

Lord *Northington* held, that the will in connexion with the articles, was a good and valid appointment, in respect to the husband, as well as in respect to his children, and though he is made to say, according to the case in *Ambler*, that the provision being for children was meritorious, yet by the decree, the provisions in the will were equally carried into effect in favour of the husband. He said, that "if a woman before marriage, retains a power over *a legal* estate, to be exercised by way of execution of a power, she may do it."

The heir carried an appeal to the house of lords, on the ground that the appointment was void as against him, and his counsel insisted, that the only mode of enabling a *feme covert* to dispose of her inheritance, was by a conveyance before marriage, to uses or trusts, reserving such a power, or else by fine after marriage, with a deed to lead the uses of it, reserving such power to her over the inheritance. They said, that unless one of those methods was taken, her will of real estate was void, and could not bind her heirs, though it bind the husband who was a party to the marriage articles; that in this case, the power rested only in covenant, or upon articles between the husband and wife, without

any estate vested in trustees, out of which an appoint-
ment by virtue of the power was to enure.  The counsel
for the respondents, on the other hand, urged, that as the
legal estate was already in trustees, any formal convey-
ance would have been a mere declaration of trust, and the
reasonableness of the provision in the will was also urged.

The decree was affirmed, and from the argument of
the appellant's counsel, (who were no less men than *De
Grey* and *Yorke*,) it is evident that they did not consider
this case as satisfying the rule in *Peacock* v. *Monk*, requiring
the wife before marriage to convey the estate in trust, or
to use, with a power reserved to direct the uses or trusts.
Lord *Hardwicke*, clearly alluded to the solemn act and deed
of the wife herself altering her estate before marriage,
and by her own free act, raising uses and trusts for future
purposes, as being requisite to sustain the power, and so
did the distinguished counsel in the above case.  Here
was no such act of hers, and nothing but simple marriage
articles between her and her husband as in the present
case; and if they be sufficient in all cases in which the wife
is seised, of any trust, inheritance or reversion, to support
her will during coverture, the force of the objection is
gone.  I consider this case, then, as containing the princi-
ple, that equity will carry into effect the will of a *féme
covert*, disposing of her real estate in favour of her husband,
and to relatives who are not her heirs at law, provided
that will be in pursuance of a power reserved to her in,
and by the ante-nuptial agreement with her husband.  It
is said, however, that the conveyance of her estate in re-
version, would have been only a mere declaration of trust,
and, therefore, useless; but might she not have transferred
her interest, equally as if it had been a legal estate, to ano-
ther person, subject to such uses as she should, afterwards,
during coverture, by deed or will declare?  She might
have done some act varying her equitable interest, and
creating new trusts, so as to have satisfied the scruples, in

the case of *Peacock* v. *Monk.* But this was not done or required in the above case; and, I think, Lord *Kenyon* was justified in referring to that case, (see *Doe* v. *Staple,* 2 *Term Rep.* 695.) as evidence that the doubts of Lord *Hardwicke* had been removed, and that a bare agreement by marriage articles was sufficient to support the will even against the heir; and Mr. *Sugden* (*Treatise of Powers,* p. 151.) cites it as evidence of the same fact. It was said, in the argument of the present case, that Lord *Kenyon* must have misunderstood the report of the case of *Wright* v. *Cadogan.* I should doubt that exceedingly. He was very familiar with equity principles and practice, and probably understood the case much better than those who have only the printed reports as a guide, for he had been several years at the bar when that case was argued and decided in the house of lords, and he speaks of the very able discussion it received in that house.

The case of *Rippon* v. *Dowding,* (*Amb.* 565.) puts the question completely at rest. In that case a widow was seised of a freehold estate, and previous to her second marriage; her husband gave a bond empowering her to dispose of her freehold estate, by deed or will, notwithstanding the coverture. The wife, afterwards, by will, gave her estate to her younger children in fee, who exhibited their bill against the heir to have a conveyance of the estate. The case of *Wright* v. *Lord Cadogan* was cited as being in point, for the principle there determined, which was the performance of the marriage agreement as against the heir. The other side contended, that the case of *Wright* v. *Cadogan* differed from the other, inasmuch as in the one case the legal interest was in trustees, and in the other it remained in the wife.

Lord *Camden* held, that though the two cases differed, in respect that the wife had only an equitable interest in the one, and the legal interest in the other, yet the principle of determination was the same in both; and that as

the court decreed performance of the agreement in *Wright* v. *Cadogan*, which was a trust interest, it will do so in this, which is the case of a legal interest. He, accordingly, decreed a conveyance.

This decision was made in 1769, and it has never been directly questioned, and certainly not overruled.

In *Compton* v. *Collinson*, (2 *Bro. Ch. Rep.* 383, 384, 385.) it was admitted by the counsel for the plaintiff, that if there be an agreement prior to marriage and in consideration of marriage, that the wife might dispose of her own property, it would have been held good in equity, and the wife would have been competent to have bound herself as to those rights which the marriage gave her, against the heir of the husband. The counsel on the other side, and who represented the heir at law, also admitted, that a covenant before marriage would have given the wife a power to dispose by will.

Such language of counsel on each side is very good evidence of the general sense of *Westminster Hall* on this point of law, and that the cases in *Ambler* were received as decisive authority. Nor do I apprehend that there is any thing in *Hodgden* v. *Lloyd*, (2 *Bro. Ch. Rep.* 534.) to weaken the force of this conclusion.

In that case marriage articles were entered into, by which the real estate of the wife was to be settled to the joint use of the husband and wife, and upon the survivor, for life; and that if she survived him, her estate was to be settled to her own use, and if not, the estate was to be at her own disposal. On the same day, and previous to the marriage, she made her will, and gave her intended husband all her estate, absolutely, and made him sole executor.— The marriage took place, afterwards, on the same day.— She died without revoking or altering the will, and the husband took possession. The question arose between the devisee of the husband and the wife's heir at law.— Lord *Thurlow* held, that articles resting in agreement

gave the husband an equitable estate for life, but that the' will was revoked by the subsequent marriage. The great point was, whether the will was a good execution of the power. The Chancellor said the will was not well made under the power, because the power was to make a will after marriage; but, in the course of his opinion, there is this observation thrown out, that, " with regard to chattels, the husband, by contract anterior to the marriage, resting only in agreement, could authorize her to make a will; but in order to make a will of real estate, he must part with the legal estate to trustees, by agreement; whilst resting in agreement only, he cannot bind the heir."

I believe that *here* is a mistake in the report; for the observation is directly against the decision in *Rippon v. Dowding*, which was cited upon the argument, and not questioned by the counsel for the heir at law. They put the objection to the will, on the ground of a revocation by marriage, and that it was not in pursuance of the power, because the power referred to an act *after* marriage.— Lord *Thurlow* repeats the same argument; whereas, if the agreement was insufficient to support a will after marriage, by way of appointment, the case would have been put upon that ground, and have cut short much discussion.— Lord *Thurlow* did not so much as notice the case of *Rippon v. Dowding*, which was cited upon the argument, and which he certainly would have done, out of self respect, at least, if he had meant to question, and much more to overrule it. It ought farther to be observed, that the counsel on each side, in this case, also cited the decision in *Wright v. Cadogan*, as proving that an agreement before marriage would support a subsequent disposition; and the Attorney General (who was afterwards Lord *Alvanley*) considered it as resolving the doubt of Lord *Hardwicke*, whether a mere agreement, or articles executory, would operate as a conveyance. He stated the rule to be, that there was no distinction in that court, as to the power of a

*feme covert*, whether the estate be a legal or a trust estate, and that articles would convey to her a power of disposing of either during her marriage.

The most accurate writers who have discussed this subject, such as *Sugden*, (*Treatise of Powers*, 151, 152.) *Powell*, (*Wood's Conveyancing* by *Powell*, vol. 2. p. 6.) and *Atherley*, (*Treatise on Marriage Settlements*, p. 336, 7.) consider the doubts of Lord *Hardwicke* as clearly resolved, or removed, by the subsequent cases which we have been considering. They all unite in opinion, that it is not now necessary that the legal estate should be vested in any indifferent person, as a trustee; and that if the intended husband should covenant, or agree, that the wife might dispose of her estate, it would enable her to do so in equity. " By a mere agreement," says one of them, " when entered into before marriage, a *feme covert* may dispose, in equity, of her real estate." If such writers are not to be cited as authority, (though *Powell* was much relied on in a *Pennsylvania* case,) they are at least good in evidence of the sense of *Westminster Hall*, and very conclusive evidence that the case of *Rippon* v. *Dowding*, has never been shaken.

The question raised in this case was also fully discussed by the supreme court of *Pennsylvania* ; (2 *Dallas*, 199. 1 *Yeates' Rep.* 221.. S. C.) and the court professed to decide the case before them upon the settled principles of the *English* Court of Chancery.

The wife, in that case, before marriage, entered into articles of agreement with her husband, and one *J. W.*, by which it was agreed, that her estate should be for their joint use during coverture, and if she should survive him, the whole estate was to remain to her as if no marriage had taken place; and that she should have power, by will, to dispose of the same to such persons, and for such uses, as she should see fit. The husband covenanted with *J. W.* to suffer this power to be carried into effect. She

married without having conveyed the estate to trustees, and had no issue, and by will devised her estate to her nephews and nieces.

The point was, whether the will was sufficient to bar the heir at law.

It was held by all the judges, (and the court then consisted of *M'Kean*, Chief Justice, *Shippen*, *Yeates*, and *Bradford*, Justices,) that the will operated as a good appointment under the articles, and that the heir was bound without any legal estate being vested in trustees. The cases of *Wright* v. *Cadogan*, and of *Rippon* v. *Dowding*, were considered as governing the case and settling the law; and the chief justice admitted, that the spirit of the former of those two decisions, implied the same doctrine with the latter.

The counsel for the plaintiff endeavored to take this case out of that of *Rippon* v. *Dowding*, on the ground, that the devisees there were not volunteers, and that the provision there, for the younger children, was meritorious.

Two of the cases already examined, sustained the provision for the husband; and if farther authority was wanting, to show that a provision for him is deemed meritorious, and that he is not regarded as a volunteer, we have it in *Sergeason* v. *Sealey*, (2 *Atk.* 412.) In that case, a widow had a power, under former articles, of disposing of 4,000 pounds, by deed or will, executed in the presence of *three* witnesses, to any person she should appoint. Previous to her second marriage, she, by articles executed in the presence of *two* witnesses only, appoints the sum of 2,000 pounds, out of the 4,000 pounds, to be for the use and benefit of her intended husband. The remaining 2,000 pounds she made a voluntary disposition of by will, but did not execute it in the presence of three witnesses. Lord *Hardwicke* held, that the articles upon the second marriage was a good appointment within the power, and though it was a defective appointment, because of two

witnesses only, yet the court would supply the defect where it was executed for *a valuable consideration.* But as the appointment of the remaining 2,000 pounds was not for a valuable consideration, but only a *voluntary* disposition, the defect in not pursuing the power was not to be aided, and it was accordingly, as to that last sum, deemed a void appointment.

So, Lord *Eldon,* in *Parks* v. *White,* (11 *Vesey,* 222.) when speaking of the power of disposition of a *feme covert,* over estates settled to her separate use, observed, that " the court had no difficulty in supposing that a woman, having such an interest, might give it to her husband as well as to any one else. The cases never intended to forbid that ; and if he conducts himself well, I do not know that she can make a more worthy disposition ; though, certainly, the particular act ought to be looked at with jealousy." Indeed, it is a clear point throughout the books, that a married woman having a power, which is a right to limit a use, may appoint to her husband, in like manner as the husband may appoint to her. (The case mentioned by *Crew,* Ch. J., in *Latch's Rep.* 44. *Halder* v. *Preston,* 2 *Wils.* 400. *Gilbert's Uses and Trusts* by *Sugden,* 150. note.) In the case of the *Methodist Episcopal Church* v. *Jaques,*[\*] (decided in *October,* 1817,) in which [*Ante,* p. 77] the power of the wife, over her property, was largely discussed, it appeared, that the gifts to the husband had been constantly sustained ; and the only check to them, suggested in the cases, is, that they were to be more narrowly inspected, on account of the danger of improper influence. If duly made in pursuance of the power, and at the same time fairly made, there is no pretence, in any of the cases, that a gift to the husband is not to be supported.

There is no ground for the suggestion, that a husband, who takes under a will founded on marriage articles like those in the present case, is a mere volunteer without consideration. The principle is well established, (*Marlbo-*

**1818.**

**BRADISH**
**v.**
**GIBBS.**

*Where a person takes by the execution of a power, he takes under the authority of that power.*

*A husband, in regard to a devise to him, by his wife, in execution of a power, is not a volunteer.*

*Marriage is a good, valuable, and meritorious consideration for an ante-nuptial contract.*

*rough* v. *Godolphin*, 2 *Vesey*, 78.) that where a person takes by execution of a power, he takes under the authority of that power. The meaning is, as Lord *Hardwicke* expresses it, that the person takes in the same manner as if the power and instrument executing the power had been incorporated in one instrument, and as if all that was in the instrument executing had been expressed in that giving the power. Now, the marriage articles are founded on the consideration of marriage, which is a good and valuable consideration; and the provision in the will is founded on the same consideration as if it had been a part of the original ante-nuptial contract. The party who claims under the execution of a power, makes title under the power itself. The husband is frequently called the next friend and nearest relation to the wife; he has a right to administer, and he takes her personal property, according to Lord *Thurlow*, (3 *Bro.* 10.) on that ground, and not on that of his marital rights. It is a general rule, that equity will execute marriage articles, at the instance of all persons who are within the influence of the marriage consideration; and Lord *Macclesfield*, in *Osgood* v. *Strode*, (2 *P. Wms.* 255.) considered the husband and wife, and their issue, as all within the influence of that consideration. A late case in chancery, (*Sutton* v. *Chetwynd*, 3 *Merivale*, 249.) only held, that a covenant, or limitation in marriage articles to *strangers*, and to a *brother*, were merely voluntary, and not to be protected and rendered valuable by the consideration of marriage.

Though I concur in the intimation of Lord *Eldon*, that the husband's claim to his wife's bounty is to be closely inspected, and wholly free from symptoms of coercion and undue influence; yet in a fair case, like the present, which has no such imputation, and where there were no offspring to claim a divided attention, I think the wife's bounty is reasonable and just. It springs from the best of human ties, and is founded on the warmest affections of

the heart.   There is less danger of improper influence exercised over the wife, in case of an appointment by will than by deed; because, a will made in execution of a power, still retains all the properties of a will, and is revocable at the pleasure of the wife.

Nor is there any weight in the objection, that the will makes no reference to the marriage articles.   It is still in this case a good execution of the power.   The rule, as declared in *Sir Edward Clere's case*, (6 *Co.* 17 *b.*) and in many subsequent cases, (2 *Bro. Ch. Rep.* 300, 301. 303. and *Bennet* v. *Aburrow*, 8 *Vesey*, 609.) is, that if a will be made without any reference to the power, it operates as an appointment under the power, provided it cannot have operation without the power.   If the act can be good in no other way than by virtue of the power, and some part of the will would otherwise be inoperative, and no other intention than that of executing the power can properly be imputed to the testator, the act, or will, shall be deemed an execution of the power, though there be no reference to the power.   Here the will can have no effect without the power, not even as to personal property; and if the power operates upon it all, it operates equally upon every part of the disposition.

*Though the will does not refer to the ante-nuptial contract, yet it is a good execution of the power; if it can have no operation without the power.*

My conclusion, accordingly, is, that the plaintiff is entitled to the relief sought by the bill; and I shall decree that the defendants execute and deliver to the plaintiff, at his expense, a release in fee, to be approved of by a Master, of their legal right and title, as heirs of the testatrix, to the house and lot in the bill mentioned; and that, as to such of the defendants as have not answered, and may not be within the jurisdiction of the court, that they be perpetually enjoined from asserting, or enforcing, their title or claim, as heirs aforesaid, to the same; and that no costs be allowed by either party as against the other.

*The heir at law will be decreed to convey the legal estate to the devisee.*

Decree accordingly.