Weight, J.,
delivered the opinion of the Court.
The complainants are the children and legatees of William W. Gee, who died in the year 1839; and file this bill to recover a slave Harriet, the property of their father at his death, and her increase.
These slaves, at the filing of the bill, were in possession of the defendant, Graves, who, about the year 1852, married Susan, the daughter of William Harris, and by the marriage, acquired Harriet and her child Houston, and, perhaps, others of her children. And certain other children of Harriet were born in his possession.
William Harris, in 1847, willed Harriet and Houston to his said daughter. He had purchased Harriet, on the *241 11th of September, 1840, of J. C. G-ee, the executor of William W. Gee, by a bill of sale, as follows:
“ Received of Wm. Harris, five hundred and twenty-five dollars for a negro girl named Harriet, aged twenty-one or two years, which I warrant to he sound, both in body and mind; and' forever warrant the title of said girl to be a slave for life. This 11th of September, 1840. ■ J. C. GEE.”
It is contended by the counsel of Graves, that J. C. Gee had authority to make this sale under the will of William W. Gee; and that William Harris, upon the execution of the bill of sale, acquired a valid title to Harriet.
This is denied by the complainants.
The clause of the will under which the authority is claimed, is as follows:
“It is my will and desire that all my property, both real and personal, be kept together, and managed and controlled by my executor, for the use and benefit of my wife Mary, during her widowhood, and the maintenance and education of my children. And, in case my wife marry again, she is to have no use or .benefit of my estate, but as follows, to-wit: I will and devise that she shall have and enjoy the rents, profits and increase of my tract of land in Wilson county, that I purchased of John Doke; my negro woman Harriet; my household and kitchen furniture; my barouche and mare; all which she is to use and enjoy during her natural life.
“At the death of my wife, the said last property, last mentioned, to be sold, and the same to be equally divided between my children, with this exception, that *242 my son James Gee, when he comes of age, shall have to him and his heirs forever, one hundred acres of the said land that I purchased of John Doke, lying in Wilson county, to be laid off and apportioned at the discretion of my executor, and no other person. When my youngest child shall come of age, all my property, both real and personal, not herein given or bequeathed, is to be divided equally, that is, share and share alike, among and between my children. I hereby nominate and appoint my brother, Joseph 0. Gee, executor of this my last will and testament, no security required of him.”
The widow of the testator never again married, and died within a month after his death, leaving their children all infants of tender years.
Joseph 0. Gee qualified as executor, and took upon himself the execution of the trusts of the will.
The first impression entertained by us upon reading this record, was, that Joseph 0. Gee, as the executor of William W. Gee, under this will, did have the power to sell the slave Harriet, but that he had failed to execute it, so as to communicate to Harris, the purchaser, any title. And it is argued for the complainants, that conceding the power to exist, still the bill of sale, upon this latter ground alone, must be held wholly inoperative, because it contains no words indicating an intention to exercise the power; but, on the contrary, appears to be the individual and personal conveyance of Joseph 0. Gee.
The rule, according to the weight of authority, seems to be, that although it is not necessary to the due execution of a power, that it should be recited or expressly referred to, yet there must be something to show that *243 the party intended to execute it. Probest v. Morgan, 1 Atk., 440; Matton v. Hutchinson, do., 558; Ex Parte Caswell, do., 559; Andrews v. Emmett, 2 Bro. C. C., 297; Bennett v. Abrenon, 8 Ves., 609; Sugden on Powers, 284. And this intention becomes manifest by such description or notice of the estate or property, the subject matter of the power, in the conveyance, as shows that it includes something the party had not otherwise than under this power; and the conveyance would be wholly inoperative, unless applied to the power. Ex-Parte Caswell, 1 Atk., 559; Bennett v. Abrenon, 8 Ves., 615; Sugden, 282 to 294; Bradish v. Gibbs, 3 Johns. Ch. Rep., 551. Plow it is palpable, that under the law of Tennessee, since the act of 1827, ch. 61, this bill of sale can be good in no other way than by virtue of the power in the will of William W. Gee. And if the power existed at all, it is difficult to see why this is not a good execution of it. But we do not mean to decide this now, it not, being necessary to the determination of this cause, and because it is held in very respectable authorities that this principle has never been supposed applicable to the conveyances made by executors and administrators. Griswold v. Bigelow, 6 Con. Rep., 258; Lockwood v. Sturdevant, do., 373.
It is enough, that upon a critical examination of this will, we think the executor had no power to make the sale. Its meaning is not exactly clear. But we take it, upon the entire instrument, that the testator did not intend that his executor should sell any of his estate, unless his wife should marry again; in which event she was to have certain property, including the slave Har *244 riet, set apart to her for her natural life; and at her death, the same, except the 100 acres of land which was to he laid off to his son James, was to be sold by his executor, and the proceeds divided among his children. Why was this particular property, and not the entire estate, to be sold? Evidently, because he contemplated that his wife might marry again, and still be aliye when his youngest child should come of age, at which time all his estate, except what is given to his wife for life and to James, was to be divided, equally, among his children; but that given to his wife was not then to be divided, but was to await the event of her death, and then to be sold, and the proceeds equally divided among his children. No property is to be assigned to the widow, separately, unless she marries, and it is only the property that is assigned to her separately, in case of her marriage, that is to be sold. In this case no property was ever so assigned, because she died still living single, and so the case for assigning her property, separately, never arose; and, in like manner, the case for a sale never arose, and the power to sell never existed.
The controlling intention of this will is, that if the testator’s widow does not marry, his property, the property itself, real and personal, is to be kept together for the use and benefit of his wife and the maintenance and education of his children, and not sold; and at the proper time divided among his children. Now that the widow' has died, single, there can be no possible reason or purpose for the sale of Harriet ■ and the land, the furniture, barouche and mare. On the contrary, we *245 think the general intention of the mil is against the exercise of any such power. 4 Term Rep., 87; Jackson v. Veeder, 11 Johns. Rep., 169.
The only remaining question is, as to the compensation claimed by Graves for keeping and raising the slaves while in his possession. , Can this he allowed to exceed the value of their hires during the same period? We think not. .
However innocent, in fact, he may be; in lawr, he can be viewed in no other light than as. a wrong doer, who has intermeddled with the property of complainants without authority, and without their consent; and we know of no principle that -entitles him to relief in such a case, beyond the hires. And this is afforded him indirectly, by allowing him to recoup against the claim of complainants, to that extent..
In the authorities to which we have been referred, by the counsel on both sides of the question, the rule seems never to have gone further than that, in the estimation of the amount ro be paid for hire, the defendants should have credit for the support and raising of any of the slaves not worth their maintenance, and for physician’s bills, taxes, &c., if any, to be deducted from the hires. Fenwick v. Macey's Ex'rs, 1 Dana, 286; Newell v. Newell et al, 9 Smedes & Marshall’s Rep, 70; Rhodes v. Hooper, 6 Lou. An. Rep., 357.
The rule in this State, as to lands held under like circumstances as these slaves, is, that the defendant shall be allowed to recoup for any permanent and valuable improvements he may have made, so that such allowances do not exceed the rents and profits ’ for which *246 he is chargeable. Jones v. Perry, 10 Yer., 59; McKinly v. Holliday, do., 477.
The Chancellor took this view of the case, and we affirm his decree.