LEMUEL NAYLOR et al. *vs.* THOMAS S. FIELD et al.

1. The will of a woman married before the act of March 23d, 1852, for the better securing the property of married women, passed no legal estate in lands conveyed to her since the passage of that act.

2. That statute gives to a married woman a mere *jus tenendi*, not a *jus disponendi;* the latter does not necessarily attach to the separate ownership of the real estate.

3. In order to construe a statute so as to repeal a former statute by implication, the implication must be a necessary one.

Case certified from the Monmouth Circuit

Argued before the Chief Justice, and Justices OGDEN and VREDENBURGH.

*J. D. Bedle,* for plaintiffs.

*J. Parker,* for defendants.

The CHIEF JUSTICE. The point certified is whether the will of a married woman, made after the passage of the act of 1852, devising lands conveyed to her after the passage of that act and during her coverture, is valid to pass the title to the lands to her devisee. Rachel Willet, the devisor, was married long prior to the passage of the act of 1852.

The power of devising lands is by statute, and did not exist at common law.

By our statute of wills, (*Nix. Dig.*, 3d ed., § 3,) wills or testaments made or to be made of any lands, tenements or hereditaments, or of any estate *pur auter vie,* by any women covert, &c., shall not be held or taken to be good or effectual in law.

Neither the first or second sections of the act of 1852 reaches this case. The first section only applies to the property of women marrying after 1852; the second, to those married at that time and to the property they then had.

Does the third section, or any of its provisions, in terms or by necessary impl_cation, repeal the disabling act already cited? That section makes it lawful for any married female to receive, by gift, grant, devise or bequest, and hold to her sole and separate use, as if she were a single female, real and personal property, and the rents, issues and profits thereof, and the same shall not be subject to the disposal of her husband nor be liable for his debts.

There is nothing here inconsistent with the provisions of the restraining act, nothing to show any intent to give the power of testamentary disposition. The sole object of the act was to protect and secure the property of married women, while living, from alienation by their husbands or their creditors.

The language of the section is, lawful *to receive*, by gift, &c., and *hold* to her *sole and separate use*, as if she were a single female, and the same shall not be subject to the disposal of her husband nor be liable for his debts.

The statute gives a mere *jus tenendi*, not *disponendi;* every word and sentence of the act can have full effect without giving the power of testamentary disposition.

The act should be liberally construed so far as to secure to married females the full use of their property during their lives, but not so as to repeal, by unnecessary implication, the provisions of another act in *pari materia*.

The argument of the plaintiff's counsel was that the *jus disponendi* is a necessary incident to the right of property.

Where once a wife is permitted to take personal property to her own use as a *feme sole,* she must take it with all its privileges and incidents, one of which is the *jus disponendi*. 1 *Jarman on Wills* 31; 2 *Kent* 170, 171; *Fettiplace* v. *Gorges,* 1 *Vesey, Jr.,* 46; *Rich* v. *Cockel,* 9 *Vesey* 375; 1 *Williams on Ex.* 47.

But the *jus disponendi* does not necessarily attach to the separate ownership of real estate.

Naylor v. Field.

In *Seacraft* v. *Hedding*, 3 *Green's Ch. Rep.*, the Chancellor held that a *feme covert* is a *feme sole* as to her separate estate, so far as to dispose of it in any way not inconsistent with the terms of the instrument under which she holds; but if the deed specifies any mode of disposition, that must be followed. But this was in a case where the deed gave her the right of disposition. The only question was, how her separate estate could be charged.

This doctrine is the creature of a court of equity, and that court may hold a will of real estate to be good where made in pursuance of marriage articles, and carry it into effect; but even there it has been held that the will of a *feme covert* is not good as to her real estate, except under a power. *West* v. *West*, 3 *Rand.* 380; 2 *Kent's Com.* 172; *Bradish* v. *Gibbs*, 3 *Johns. Ch. Rep.* 523, and cases there cited.

In the case last cited Chancellor Kent remarks, referring to the will of a *feme covert* made in pursuance of a power: " At law such a will is void, and in the very case of Peacock *v.* Monk we find a decision of Ch. Justice Willes, in which it was held, after consultation with the other judges, that the husband could not give power to his wife to make a will of land. This determination meant, and it could only mean, that the devise of a *feme covert*, though made in pursuance of a power, was, equally with a will made without such power, void in a court of law." *Maqueen on Husband and Wife* 297.

I am not disposed to extend by construction the act in question, by holding that the power of conveying and devising flows from the general words of the act. It may be proper to say that, since the passage of the act of 1852, the legislature is understood to have refused to pass a bill giving to married women the power of conveying and devising their lands, showing its opinion that the grant of such powers was deemed unnecessary and impolitic.

The Circuit Court should be advised to give judgment for the plaintiff.

Naylor v. Field.

VREDENBURGH, J. The only question in this cause is, whether a will of a woman married before the passage of the act for the better securing the property of married women, passed March 25th, 1852, of lands conveyed to her since the passage of that act passes the legal title.

The act of 1846, (*Nix. Dig.* 874, § 3,) provides that wills or testaments, made or to be made of any lands by any woman *covert*, shall not be held or taken to be good or effectual in law.

If this section, therefore, be not repealed, either expressly or by implication, this will cannot be effectual in law.

But it is claimed by the defendants that the act first above recited, of the 25th of March, 1852, does repeal it, not expressly, but by necessary implication.

The third section of the act of 1852, which governs this case, provides that it shall be lawful for any married female to receive by gift or grant, and hold to her sole and separate use as if she were a single female, real and personal property, and the rents, issues, and profits thereof, and the same shall not be subject to the disposal of her husband, nor be liable for his debts.

In order to construe a statute so as to repeal a former statute by implication, the implication must be a necessary one.

It is contended here that the *jus disponendi* is a necessary incident of all property, and as this statute takes away all property from the husband, and vests whatever rights he had under the old law in the wife, and gives her an absolute present fee, that by necessary implication it repeals the act of 1846.

But, in the first place, it is not universally true that the *jus disponendi* is an incident of property. It is and always has been suspended in the cases of infants and lunatics, and until the passage of the act in question, as to *feme coverts*.

In the next place, it is apparent that the clause in ques-

tion was not intended to remove any disability the wife was under to dispose of her property; it was only intended to give her a property in the land, which would otherwise, by the conveyance to her, *ipso facto* vest in the husband, to wit, the estate, during their joint lives.

It was this joint estate, and no other, the act was intended to affect. The act intended that, as before its passage, a married woman could not receive by grant any land as a married woman without its vesting *ipso facto* during their joint lives in the husband, she should, by the act, be enabled to receive it otherwise, that is, she should be able to receive it not as a married woman, but as a *feme sole*, so that it should not *ipso facto*, by the reception, vest in the husband ; but the act had to go further, for if it had stopped with the word "receive," although she might receive it as a *feme sole*, yet the very next instant after she received it, it would vest in the husband by virtue of the marriage relation, as if she had got it before marriage. So it was necessary for the act to go further, and it adds accordingly, that it shall not only be lawful for her to receive it as a *feme sole*, but that she shall hold it as a *feme sole*. This was necessary, because from the instant that she ceased to hold it as a *feme sole* she would hold it as a married woman, and a joint estate thus vest in the husband, and subject it to his control and debts. To prevent this was the sole object of the words "receive and hold." But this power to receive and hold under the act is limited to the continuance of the marrige in its express terms. It is only a married woman can so hold. As soon as the marriage relation ceases the act has no object on which it can operate. The property, upon the death of either husband or wife, is instantly as if the act had never been passed.

It is contended that the word "hold," in the act, meant that the wife should hold as in a pure fee simple; but it is apparent that the word "hold" was not intended to be used by the act in that sense, but simply to prevent the

estate, at each instant during the marriage, becoming the joint estate of husband and wife. It was absolutely necessary to use that word to prevent the title at each instant lapsing into a joint estate.

It is impossible to construe the word as the defendants would without altering the relationship of husband and wife; much more, then, it is apparent the legislature intended the great and only object of the act was to prevent the joint estate and to free the land from the debts and control of the husband during coverture. But it did not intend to affect the marriage relation, strictly so speaking, at all.

The words receive and hold were only intended to indicate the character in which she held the property in its relation to the debts and control of the husband, but not to disturb the marriage relation in any other respects. She still is wife, and he husband. He is, as yet, entitled to live in her house, to eat at her table, and to sleep in her bed. She cannot, therefore, hold literally as a *feme sole*. She cannot bring an action of ejectment, and thus pass against him a decree of divorce *a mensa et thoro*. All the relations, privileges, and disabilities of husband and wife still exist, save only that the mere fact of marriage does not vest in him a joint estate. This court decided in *Adams* v. *Ross*, 4 *Dutcher* 160, that notwithstanding this act the husband, at the death of the wife, was entitled to his curtesy.

. It is true that in the State of New York it has been decided (28 *Barb.*) that the husband has no curtesy; but in that state the statute, in express terms, gives the wife the *jus disponendi.*

What necessary implication is there that the act of 1852 repeals *quo ad hoc* the act of 1846? Before the act of 1852, the wife owned the fee simple subject only to the curtesy and the joint estate, yet she was expressly deprived of the *jus disponendi*. The act of 1852 only gives her the additional estate during the marriage. Why would

she have the *jus disponendi* any the more because the act disenables the estate to pass to the husband ?

Acts of similar import have been passed in several of the other states; but I have been unable to find a single case where it has been construed to carry with it the *jus disponendi* without an express provision to that effect. Our act is a copy of that of the State of New York, so far as it goes, but refuses to follow it, so far as regards the power to convey or devise.

I am satisfied that the whole object and intent of the words "receive and hold" was merely to prevent the estate during coverture from lapsing into a joint estate, and not otherwise to affect the marriage relation or give any power to convey or devise, and that the mere disenabling the estate from passing through the wife to the husband and wife during marriage was not intended to give, and did not necessarily give her the *jus disponendi*.

OGDEN, J., concurred.

CITED *in Eckert* v. *Reuter,* 4 *Vr.* 268; *Horner* v. *Webster, Ex'r,* 4 *Vr.* 405; *Johnson* v *Cummins,* 1 *C. E. Gr.* 106; *Belford* v. *Crane,* 1 *C. E. Gr.* 273; *Vreeland* v. *Vreeland's Adm'r,* 1 *C. E. Gr.* 524; *Dilts* v. *Stevenson,* 2 *C. E. Gr.* 414; *Porch* v. *Fries,* 3 *C. E. Gr.* 209; *De Ronge* v. *Elliott,* 8 *C. E. Gr.* 490; *Vreeland's Ex'r* v. *Ryno's Ex'rs,* 11 *C. E. Gr.* 162.