## Case No. 10,134.
### NEVES et al. v. SCOTT et al.
[9 Law Rep. 67.]

Circuit Court, D. Georgia. June, 1846.[1]

ANTENUPTIAL CONTRACT — EXECUTORY — BILL BY STRANGER TO THE CONSIDERATION — EQUITY — RULE IN SHELLEY'S CASE — SPECIFIC PERFORMANCE.

1. Two parties, intending marriage, entered into articles of agreement between themselves, without the intervention of trustees, and without the concurrence of any other party, by which they agreed that all property which then was or should thereafter become their right, should remain in common between them during their natural lives, and was to continue the property of the survivor until death, and then to be divided among the heirs of one and the heirs of the other, share and share alike. The parties intermarried; each acquired property during the marriage; the wife survived the husband, kept possession of the property, and married again, and at her death, without issue, her second husband took possession of the whole estate. The first husband, before his death, had made a will, devising one half of his estate to another party. The brothers of the first husband brought a bill in equity, claiming one half of the estate as his heirs, under the original articles, alleging that the will could not control

1 [Reversed in 9 How. (50 U. S.) 196, 13 How. (54 U. S.) 268.]

the articles, and praying for a division of the estate, and for an injunction against the devisee from setting up any right under the will. On general demurrer, it was *held* that the articles of agreement constituted an executory, and not an executed, agreement.

2. A volunteer, or one who is not within the influence of the consideration of an executory agreement. or who does not claim through one who is within it, cannot maintain a bill to enforce its performance.

3. The complainants. being brothers of the first husband, were not within the influence of the marriage consideration; and since they claimed the estate on the ground that the terms by which they were designated in the articles of agreement were words of purchase, and not words of limitation, they did not claim through a party who was within the influence of the consideration, and were therefore volunteers.

4. In equity, what *ought to be done* should be considered as having been done; that the estate must be considered as having become vested in the first husband, according to the rule in Shelley's Case; and the heirs could only claim through him, and not in their own right.

5. The consideration of marriage and a portion extends only to the husband, the wife, and their issue. unless the settlement is made through the instrumentality of a third party, whose concurrence is necessary.

6. Where an action of law might be brought in the name of trustees. to recover damages for the non-performance of a covenant, it seems that equity would enforce the specific execution of the covenant.

7. Upon the foregoing *considerations*, the demurrer should be allowed.

This was a bill filed by the complainants [William Neves and James C. Neves] against the defendants [William F. Scott and Richard Rowell], to enforce the articles of agreement entered into by John Neves and Catharine Jewell, anterior to their intermarriage, dated February 17, 1810, by which it was agreed "that all the property, both real and personal, which there was or may thereafter become the right of the said John and Catharine should remain in common between them, the said husband and wife, during their natural lives; and, should the said Catharine become the longest liver, the property to continue hers so long as she shall live, and at her death to be divided between the heirs of her, the said Catharine, and the heirs of the said John, share and share alike, agreeably to the distribution laws of the state made and provided. And, on the other hand, should the said John become the longest liver, the property to remain in the manner and form as above."

The bill alleged that the said marriage took place; that, subsequently thereto, the said John purchased many slaves and other property, and that the said Catharine acquired, by a bequest from her sister, other property of value; that the said John died in 1828, never having had any children, leaving the complainant William Neves, and his brother, and the complainant James C. Neves, his nephew, his heirs at law, and leaving a large estate, real and personal; that, after the death of the said John, all of said property (except some she disposed of)

remained in the possession of the said Catharine, his widow, until her subsequent intermarriage with the defendant, William F. Scott, in the year 1835; that the said Scott, after his marriage, exercised control over said property; that the said Catharine died in 1844, without ever having had issue and leaving the said William F. the sole heir at law of her half or share of said estate, and who possessed himself of the whole estate, and refused to account with the complainants for their half, &c. The bill then further alleged that John Neves, when on his death-bed, and when in extremis, made a will, under the coercion and fraudulent procurement of the other defendant, Richard Rowell, by which John devised and bequeathed one half of his estate to George Rowell, the son of Richard; but the complainants allege that the will could not affect their vested rights under the deed of marriage settlement, whether the will be valid or not; but that Richard Rowell, as executor of said fraudulently procured will, claims one half of said estate adversely to the complainants. The bill then further alleges that both the defendants are estopped from disputing the rights of the complainants as vested under and by virtue of the deed of marriage settlement, because it has been heretofore judicially and finally adjudicated in the superior court of Baldwin county, Georgia, that the marriage settlement was not affected or controlled by the will of said John Neves, which adjudication took place in a proceeding on the equity side of said superior court, wherein the said Catharine, then Catharine Neves, was complainant, setting up and insisting on the deed of marriage settlement as paramount to said will, and Richard Rowell was defendant; and afterwards Richard Rowell was complainant in a cross bill, and Catharine and William F. Scott were defendants; William F. having also been made a party to the original bill pendente lite; and it refers to said equity proceedings as exhibits to the complainants' bill. The prayer of the bill was for a division of the whole estate in the hands and control of the defendant Scott, between the complainants and the defendant Scott; and that the defendant Richard Rowell, be perpetually enjoined from setting up any right under the will, &c.; and for further relief. The bill, answers, cross bill, &c. between Catharine Neves and Richard Rowell (to which the defendant Scott was subsequently made a party) are very voluminous, but the only part necessary to set forth is the final decree of the special jury (who, in the state courts of Georgia, act as co-chancellors with the judge,) in said cause, which final decree was as follows: "We, the jury, find for the complainant a life estate in the property, agreeably to the provisions of the marriage contract, leaving all other persons to contest their rights at her death; and we further find that the complainants do pay to defendant the sum of nine hundred and two

dollars and seventy-five cents, which have been allowed by the special jury, at this term, upon an appeal from the court of ordinary, as expenses and cost, incurred by the defendant in proving the will of John Neves, deceased, and resisting the marriage contract between John Neves and Catharine Neves, his wife; and we further find for the complainant the costs of suit. S. Boykin, Foreman."

To this bill of complainants, general demurrers were filed by the defendants respectively, and the demurrers were argued upon paper, and submitted to the court. The ground relied on in support of the demurrers, was, that the complainants were volunteers, not within the scope of the marriage contract, which, it was alleged, was only an executory, and not an executed, contract; in other words, that it was only marriage articles, and not a marriage settlement; and that a court of equity would never lend its aid to a mere volunteer, to enforce an executory agreement.

Seaborn Jones and S. T. Bailey, for complainants.

Francis H. Cone. for defendant Rowell.

Kenan & Rockwell and Robert M. Charlton, for defendant Scott.

NICOLL, District Judge. The agreement which forms the subject of the bill in this case was entered into by John Neves and Catharine Jewell, on the eve of their marriage. They were the only parties to it, and it was founded exclusively on the consideration of marriage, and other considerations moving only between the parties themselves. The consideration of such an agreement extends only to the husband and wife and their issue. Osgood v. Strode, 2 P. Wms. 245; Ath. Mar. Sett. 125, 127–151; 2 Story, Eq. Jur. § 986; Sugd. Vend. (5th Ed.) 466, 467; Bradish v. Gibbs, 3 Johns. Ch. 550; 2 Kent, Comm. 172, 173. And it is admitted by the counsel for the plaintiffs that a volunteer, one who is not within the influence of the consideration of an executory agreement, or who does not claim through one who is, cannot seek the aid of a court of equity to enforce its performance. Coleman v. Sarrel, 1 Ves. Jr. 50; 3 Brown. Ch. 12; 1 Fonbl. 406; Story, Eq. Jur. §§ 433, 973, 986; Ath. Mar. Sett. 398, 399. That the instrument under which the plaintiffs ask the interposition of the court constitutes an executory, and not an executed. agreement. can scarcely admit of doubt. It is in terms an executory, and not an executed, agreement, and of the most informal character. It transfers no property, passes no estate, declares no trustees, and contains no word of direct and immediate conveyance. and nothing to indicate that it was a complete and actual settlement. It relates not merely to property in possession, but to that which might be acquired in future; and the greater part of that which is the subject matter of the plaintiffs' bill was subsequently acquired either by purchase or descent, and could not be the subject of an executed contract. The title of the plaintiffs therefore rests entirely in covenant. Coleman v. Sarrel, 1 Ves. Jr. 54; Ellison v. Ellison, 6 Ves. 656; Antrobus v. Smith, 12 Ves. 39–46; Ath. Mar. Sett. 186. It is an executory agreement, then, to enforce which the interference of a court of equity cannot be obtained at the instance of a volunteer.

Now the bill, in this case, seeks the aid of the court upon the ground, that, by the stipulations of the marriage agreement, the plaintiffs were to have the absolute and entire property after the expiration of the life estate of Neves and his wife; that the precedent estate vested in Neves and wife; the first taken under the articles, was circumscribed to, and could not endure beyond, their lives; and that by the limitation over, the plaintiffs became entitled to the property, not by succession or descent, as coming in, in the estate of the first taker, but as taking originally in the capacity of purchasers in their own right; in other words, that the terms under which they claim title, and by which they are designated, are words of purchase, and not words designed to indicate the quantity of interest or magnitude of the estate which Neves and wife took; that consequently the interest of Neves and wife was limited to a life estate, the remainder did not become executed in possession in them, and that they and neither of them could by will, or otherwise, control or dispose of the property, after the termination of their respective lives, or bar the plaintiffs. Such is the aspect in which the claim of the plaintiffs is presented by their bill, and such was the construction given to the instrument by the bill, instituted by Mrs. Neves, in her lifetime, in Baldwin superior court. Since. then, the plaintiffs, who are the brothers of the husband Neves, are not within the influence of the marriage consideration, and since they claim to take. not derivatively or by transmission, from or through either or any of the parties, who came within the influence of that consideration. they are unquestionably volunteers. and are not entitled to the aid which they seek.

The view which I have taken is sustained by the authorities whose aid has been invoked by the counsel for the plaintiffs. The cases referred to by them may be resolved into three classes:

1. It is an established principle in equity, that what ought to be done shall be considered as done; "and a rule so powerful it is as to alter the very nature of things, to make money land, and, on the contrary, to turn land into money; thus money articled to be laid out in land. shall be taken as land, and descend to the heir." Lechmere v. Earl Carlisle. 3 P. Wms. 215; Babington v. Greenwood, 1 P. Wms. 532. It is also a well-set-

tled rule of law, which equity must follow (Butler, note 249, subd. 14, to Co. Litt.); that if by one and the same instrument, a life estate is given to a person, with a limitation in remainder to his heirs in fee, whether with or without the interposition of an intermediate estate, the remainder unites with the precedent life estate, and is immediately executed in possession in the person who takes the life estate, who thus becomes seised of an immediate estate in fee. The word "heirs" is in such a case a word of limitation of the estate, and the heirs of the first taker take not by purchase, in their own right, but as standing in the place of the first taker, and embraced in the extent and measure of the estate of which he was seised. The heir takes not originally in his own right, but through the first taker. Shelley's Case, 1 Coke, 93. When, then, it is agreed by marriage articles, that money shall be laid out in lands, to be settled, for example, on the husband for life, with remainder to the sons of the marriage in tail male, remainder to the daughters, remainder to the heirs of the husband, forever, and the husband dies without issue, as a court of equity will, upon the application of one who has a right to pray that the agreement be executed, consider the money as land, and treat the investment as actually made in the lifetime of the husband, it regards him as seised, in his lifetime, of an estate in fee, which of course, upon his death, devolves by descent or transmission upon his heir, who succeeds through the husband to the estate thus vested in the latter, and does not become entitled to it by purchase, that is, originally in his own right. To this class may be referred Kettleby v. Atwood, 1 Vern. 298, 471; Lancy v. Fairechild, Id. 101; Knights v. Atkyns, Id. 20; Edwards v. Countess of Warwick, 2 P. Wms. 171; 4 Brown, Parl. Cas. 494; 3 Atk. 447; Lechmere v. Earl Carlisle, 3 P. Wms. 211; Cas. t. Talb. 80; Ath. Mar. Sett. 126, 127, 398; 2 Pow. Cont. 104.

Indeed, the only inquiry in these cases was, whether the property was to be considered land or money; in other words, whether the heir or personal representative was entitled to it; for if it were to be regarded as land, there could be no doubt that it would go to the heir. If the land had been purchased and settled in the lifetime of the husband, in the case which I have supposed, as in the cases to which reference has been made, it could not be questioned that it would have descended to the heir, whether he were a collateral or not; he would have been entitled to it as standing in the place of his ancestor and coming within the limitation of his estate. And the ground expressly assumed by counsel, and acted upon by the court, in some of the cases, was, that the estate of the husband, upon whom the land was to be settled for life, and that of his heir, constituted one and the same estate; that the remainder in fee united with the life estate,

and became executed in the husband, who thus became seised of the fee; and that, as a specific performance of the agreement would have been enforced at the instance of the husband if in life, it would in like manner be enforced on the prayer of 'the heir, who was embraced in the husband, and succeeded to his estate. See, also, Co. Litt. 226.

2. Although the consideration of marriage and a portion extends only to the husband, wife and their issue, yet where the settlement is made through the instrumentality of a party whose concurrence is necessary to the validity of the settlement, and who insists upon a provision in favor of a person, for instance, a younger child, a collateral relation of the husband, who would not come within the consideration of marriage, such person is held not to be a mere volunteer, but as falling within the range of the consideration of the agreement. Such are the cases of Osgood v. Strode, 2 P. Wms. 245; Goring v. Nash, 3 Atk. 186; to which may be added Roe v. Mitton, 2 Wils. 356. But these cases themselves establish that the marriage consideration alone will not support the limitation to a brother or sister, and are therefore adverse to the claim of the present plaintiffs. In Osgood v. Strode, the father and son each "having an interest in the premises, so that one without the other could not make a settlement thereof," on the treaty of marriage of the son, in consideration of the marriage and of a portion paid to the son, covenanted with trustees, inter alia, that the premises should be settled on the son for life, remainder to the sons of the marriage in strict settlement, remainder to the plaintiff, a grandson of the father and nephew of the son, and his heirs male, remainder to the right heirs of the father. The father died, and afterwards, the son and his wife, without any issue. Lord Macclesfield, in delivering his decision, said: "The marriage and marriage portion support only the limitations to the husband and wife, and their issue; this is all that is presumed to have been stipulated for by the wife and her friends. But," he proceeds, "each of them, Lawrence Head (the father) and Edward Head (the son,) having an interest in the premises, so that one without the other could not make a settlement thereof, here is now a proper person for old Lawrence Head, the father, to stipulate with his son Edward, and it may be well intended that old Lawrence Head did stipulate with his son Edward, that he (Lawrence) would come into these articles, and join therein, on terms that the estate should, in case of Edward's dying without issue male of the marriage, &c., then go to the plaintiff Osgood; and this was probably part of the marriage agreement, and of the terms on which it was made; though the leaving out the sons of Edward by any other marriage might be a mistake. But since this might be, and probably was, nay, appears to have been, the terms of this marriage

agreement, and the inducement to old Lawrence Head to join therein, equity ought to decree the performance of it; but I will give no costs." The ground, therefore, on which that case was decided, was, that the provision for the plaintiff came within the consideration of the agreement, which was a valuable one, the parting with an estate by a party, other than the husband and wife, whose concurrence in the agreement was essential to its validity; while the case also establishes that the plaintiffs here are mere volunteers. the limitations to whom are not supported by the consideration of the agreement between Neves and his wife.

In Goring v. Nash, 3 Atk. 186, a father seised in fee had an only son and four daughters. On the marriage of his son, he entered into articles, by which he agreed to settle the estate to the uses of the marriage, with remainder, to the use of Lady Goring, one of the daughters, in tail male, remainder over. The son died without issue. The father then died; and the legal fee descended upon Lady Goring and her three sisters. No settlement having been made in pursuance of the articles, Lady G. brought her bill against her three sisters. to have the articles carried into effect. One of the grounds upon which Lord Hardwicke rested his decree, was, that it was a provision by a father for his daughter (page 189). that it was a provision for younger children, which is always favored in a court of equity, and carried into execution. That such children are considered purchasers by reason of the natural obligation of parents to provide for their children (page 191), and the court has always decreed the provision made by a parent for a child to be as extensive as the parent intended it, when it does not introduce a hardship, or leave the other children in distress (page 192). And so far from his judgment importing that a specific performance would be decreed at the instance of collaterals, the reverse is implied. The import of his remark is, that such a decree will not be made at the instance of a collateral, but if such decree be made at the instance of a younger child, the articles will, according to the course of chancery, be carried into effect in whole, and not in part only, and thus will be executed in favor of collaterals. He says (page 189) all the decrees for specific performance of marriage articles on limitations for younger children, are authorities in favor of the plaintiff, and where such articles have been decreed at all, they have been carried into execution even as to collaterals, and not carried into execution in part only (page 190). There is no instance of decreeing a partial performance of articles; the court must decree all or none; and where some parts have appeared unreasonable, the court has said, "We will not do that, and therefore, as we must decree all or none, the bill has been dismissed. * * * Nobody can tell what it is the parties who are dead have laid the greatest

weight upon in coming to agreements, and therefore it would be attended with bad consequences, if agreements were to be split, and one part decreed but not another." 2 Kent, Comm. 172, 173. The case of Roe v. Mitton, 2 Wils. 356, where a mother interested in the estate united in a settlement, making a provision for a younger son, rests upon the same principle, and is also an authority in support of the proposition that the marriage consideration alone will not sustain a limitation to brothers. See, also, Stephens v. Trueman, 1 Ves. Sr. 74.

3. One of the grounds on which Lord Hardwicke placed his decision, in the case of Goring v. Nash, was, that an action of law might have been brought, in the name of the trustees, for the recovery of damages, for the non-performance of the covenant, and, therefore, to avoid the circuity of bringing such an action, and afterwards of applying to equity to have the damages invested in land, and settled according to the terms of the articles, and also, because a court of law has no means of apportioning the damages. according to the respective rights of the parties, equity would enforce the specific execution of the covenant. And it is upon this ground that Lord King principally rested his decree in the case of Vernon v. Vernon, 2 P. Wms. 594. See, also, 3 Atk. 190; Stephens v. Trueman, 1 Ves. Sr. 74; Williamson v. Codrington, Id. 513, arguendo. But such a ground is treated as forming an exception to the general rule (1 Ves. Sr. 74), and leaves this, and other cases where the same ground does not exist, subject to the operation of the rule. There are other circumstances which contributed to influence the decision in the case of Vernon v. Vernon. The eldest brother of the family had bequeathed a large personal estate to the husband, with a limitation over to the plaintiffs, his other brothers, upon a contingent event, which, making the limitation void, vested the husband with the absolute and entire interest; and Lord King thought that the husband might be induced to enter into the covenant, to make to the plaintiffs some recompense or satisfaction for what was intended them by the bequest. The father, also, was a party to the articles, and, it appears from the report in 4 Brown, Parl. Cas. 31, "insisted upon the provision for the plaintiffs, and afterwards declared that it should never have been a match if the wife and her friends, as well as the husband, had not agreed to make the settlement in that manner;" thus assimilating it to the second class of cases which I have enumerated. But to whichever of these grounds the decision in Vernon v. Vernon may be referred, it must be obvious that that case can be considered as an authority only in cases similarly circumstanced.

Within no one of these classes does the case under consideration fall. There exists nothing, therefore, to relieve it from the operation of the general rule, that the per-

formance of a contract will not be enforced at the instance of a volunteer. And since the consideration of a marriage, or a portion, or other consideration, moving only between husband and wife, (and no other consideration exists here,) will not extend beyond the husband and wife, and their issue,—and collaterals and all other persons are mere volunteers,—the plaintiffs in this case, who are such collaterals, are not entitled to the aid which they pray.

The demurrer is therefore allowed.

[On appeal to the supreme court, the decree of this court was reversed. 9 How. (50 U. S.) 196. It being suggested that, at the time the case was decided, Richard Rowell, the principal defendant, was dead, the judgment was stricken out, and the cause argued again. At the re-argument, the decree of the circuit court was again reversed. 13 How. (54 U. S.) 268.]