EDWIN BEARDSLEY AND NATHAN OAKS, ASSIGNEES OF LEMAN B. HOTCHKISS, RESPONDENTS, *v.* WILLIAM B. HOTCHKISS AND OTHERS, RESPONDENTS, AND THE GENEVA NATIONAL BANK AND OTHERS, APPELLANTS.

*Ante-nuptial agreement — ratification of it by an infant wife after she becomes of age — power reserved to her of devising the property — what estates and limitations she may create under it — absolute ownership must vest within the duration of lives existing when the agreement was made — distinction between real and personal estate — allowance to the father for moneys advanced to and expended for infant. and adult children..*

The defendant Hotchkiss having made a general assignment containing preferences to the plaintiffs, the defendant, The Geneva National Bank, a general creditor, contested in this action the amounts due to the creditors constituting the second preferred class. These creditors were children of the assignor, and the debts were claimed to be due to them for property, both real and personal, to which they were entitled under the will of their mother, and which had been received and not accounted for by him. Prior to the marriage of the assignor and on April 29, 1844, an ante-nuptial agreement was entered into between him and his intended wife, Lucretia Oaks, who was then under the age of twenty-one years. The agreement provided that all her property, both real and personal, was to be conveyed to a trustee; that she should receive for and during her natural life, and free from all control of her husband, the rents and profits thereof; that upon her death the trustee should stand seized for the use of her husband, if he survived her, and if not for the use and benefit of her heirs, subject to a power reserved to the said Lucretia to give and devise, notwithstanding her coverture, the said premises to and among her husband and their issue, or to him, or to such issue or any of them, in such shares and proportions as to her should seem meet. Such gift or devise to take effect, and the estate so given and devised to vest in the devisees named, as the same should be to them given and devised upon her death.

The wife died in 1855, leaving her husband and five children her surviving, and a last will and testament, made in January, 1850, by which she bequeathed the property named in the ante-nuptial agreement to her children, and appointed her husband her executor and the guardian of the children. The will was proved and letters testamentary were issued to the husband, who took possession of the property, both real and personal, and applied the rents, issues and income thereof to his own use.

It appeared that the trustee never took possession of the property, but that the rents, issues and profits were collected and used by the wife and her husband. The referee charged the husband with the amount of the rents and profits of the real estate,. and with the amount of the personal property which came into his hands, and which constituted the personal estate of the wife prior to her marriage.

*Held,* that although the ante-nuptial agreement was voidable by reason of the infancy of the intended wife, and although the burden of proving that she had ratified it after attaining her majority rested upon those claiming under the agreement, yet as sufficient proof of such ratification was given the agreement was valid, as against the creditors of the husband, and prevented them from claiming that he was entitled to receive the rents and profits of the real estate, subsequent to his wife's death, by virtue of his marital rights and as a tenant by the curtesy.

The ante-nuptial agreement recited that all the personal property of the intended wife should be settled and reserved for her sole and separate use during her life, and that she should have power to dispose of the same by her will as therein provided. Her husband covenanted therein that he would join and concur with her in all such acts and deeds as might be necessary to effect such settlement. No conveyance of the property from her or her husband to the trustee was ever executed.

*Held,* that as against the husband and his creditors the equitable title to the personal property of the wife was transferred to the trustee, and as a specific performance of the covenant of the husband could at any time be compelled by the trustee, or after the death of the wife by her legatees, the husband was properly charged with the amount of the personal property so received by him.

The will of the wife, after referring to the ante-nuptial agreement and the power therein reserved of giving and devising her estate as therein described and referred to, proceeds as follows: "Now therefore I, the said Lucretia Hotchkiss, do make, publish and declare this my last will and testament in the manner and form following, that is to say: First. I give, devise and bequeath unto such child or children as I shall leave or have living at the time of my decease, and to their heirs and assigns forever, all my real and personal estate of every manner and nature, wheresoever situated, and more particularly described in the instrument hereinbefore referred to."

*Held,* that the will was intended to be an execution of the power reserved to the testatrix and nothing more, and that it was not intended to, and did not, pass or affect real and personal property acquired by her after her marriage; and that as to such property she died intestate.

The testatrix left her surviving five children, all of them minors. One of them died under age, unmarried and without issue. The devise to the children was followed by a clause as follows: "Provided, nevertheless, that in case either or any of my children living at my decease shall die before he, she or they shall arrive at the age of twenty-one years, and without issue living at the decease of such child or children, the share or. estate of the child or children so dying shall vest and belong to; and I give and devise the same to the survivor or survivors of such deceased child or children."

*Held,* that the testatrix was authorized by the terms of the ante-nuptial agreement, to so limit the estates devised to her children, and provide for the division of the share of a child dying under age and without issue among its brothers and sisters.

That the gift over of the share of a child so dying was valid as to the real estate, but invalid as to the personal property as unlawfully suspending the absolute ownership thereof.

That the share of the real estate of a child so dying vested absolutely in the survivors, and would not be divested by their subsequent death under age and without issue.

That the rents and profits accruing upon the share of a child so dying, from the time of the death of his mother to that of his own, were his own absolute property and did not follow the devise over of the real estate.

From the time of the death of the mother the minor children resided with the father, and were maintained and educated by him at his own cost and expense. Two of the daughters continued to reside with their father, and were so maintained and supported after they had arrived at full age.

*Held,* that the father should not be credited with the cost of supporting and maintaining the minor children, but should be credited with money advanced to the children, after they came of age, to complete their education, and for their wardrobes and traveling expenses, as advances made out of the moneys in his hands as their guardian and trustee.

APPEAL by the corporation defendants, from a judgment entered upon the report of a referee.

William B. Hotchkiss, an insolvent debtor, made an assignment of all his property for the benefit of his creditors on the 7th of June, 1879, naming the plaintiffs as his assignees, who accepted the trust and entered upon its execution. The creditors are classified, the appellants being placed with the general creditors who are mentioned in the assignment as the fourth class. Among the preferred creditors who constitute the second class, are the assignor's three children, William B., Fannie T. and Alice L., who are the children of his late wife Lucretia Hotchkiss. The debt due these children was not liquidated at the time of the assignment, and the assignees were directed to pay them such sums as should be found due on an accounting after allowing all just payments and offsets. A portion of the assets have been converted into money and the first class of creditors paid off in full, and there is now in the hands of the assignees a large amount of valuable assets.

This action is for the purpose of determining the amount due the children, and for instructions. The main controversy is over the question of how much is due from the assignor to his said children respectively.

Leman B. Hotchkiss, the assignor, intermarried with Lucretia Oaks on the 1st day of May, 1844, in Ontario county, in this.

State.    Prior thereto and on the twenty-ninth day of April, of
the same year, an ante-nuptial agreement was entered into by
and between them, Lucretia Oaks being at that time an infant
under the age of twenty years.    The property belonged to the
intended wife, and consisted of lands of large value and also of
some personal property.    The articles, upon the treaty for said
intended marriage, which were agreed to by and between the said
Leman B. Hotchkiss and said Lucretia Oaks, provided that all the real
estate belonging to the said Lucretia should be conveyed to Willard
Wells, as trustee, and that she should receive for and during her
natural life and for her sole and separate use, the rents and profits
thereof, free, clear and discharged from the control of her intended
husband, and if her husband survived her, then the trustee was to
stand and be seized of the lands for the use of him, her
intended husband, for and during his natural life, and in case
he should not survive the said Lucretia, then upon her death
the trustee was to stand and be seized of the real estate for the use
and benefit of the heirs of the said Lucretia, she reserving the
right and power to give and devise the said real estate to and
among her lawful issue, or any one or more of such issue in such
shares and proportions as she should deem meet, or to devise the
said real estate to the said Leman B., her said intended husband, or
to him and her said issue, or to him and any one or more of such
issue, in such shares and proportions as to her should seem meet,
notwithstanding her coverture.    In express terms Hotchkiss, the
intended husband, gave his consent to the conveyance to the trustee
and joined in the execution of the instrument, releasing all control
over the rents and profits.    Mrs. Hotchkiss died in July, 1855,
leaving her surviving her husband and five children.    Prior to her
death and in January, 1850, she made and executed a last will and
testament which has been admitted to probate, and by the terms of
which she bequeathed the property mentioned in the marriage
articles to her children, naming her husband as executor of the
will, to whom letters testamentary were issued, and constituting
him the guardian of her children.    Upon the death of the wife her
husband went into possession and received the rents and profits of
all the real estate, as well as the personal property, and it appears,
from the proof, that he applied the income of the real estate and

converted to his own use the personal property, and in the accounting before the referee, with a view of ascertaining the sum justly due his children, he was charged with the rents and profits of the real estate, and with the amount of the personal property which came to his hands and which constituted the personal estate of his wife prior to her marriage.

The appellants insist that as Mrs. Hotchkiss was a minor at the time of the execution of the articles they were voidable, and that she never ratified them after arriving at full age, but in fact disaffirmed them, and for that reason her husband had an estate by the curtesy in all the lands, and became the absolute owner of all the personal estate of his wife as it existed at the time of the marriage.. The other facts necessary to the questions discussed are mentioned in the opinion.

*Barlow & Olney*, for the National Park Bank of New York appellant.

*Mason & Rose*, for the defendant Banks of Geneva.

*W. H. Adams*, for the defendant, The First National Bank of Canandaigua, appellant.

*C. E. Hobby*, for the plaintiffs, respondents,

*Coggswell & Bentley*, for the defendant Hotchkiss, respondent.

BARKER, J.:

The question first argued on the hearing is the one which we shall first consider, that is, had Leman B. Hotchkiss, the husband, an estate by the curtesy in the lands of which his wife was seized, as owner in fee simple, at the time of the execution of the marriage agreement. This instrument is in due form of law, the intention of the parties thereto is clearly and intelligently expressed, and the purpose sought to be effectuated by the parties was in every respect legal. This being so the trustee became vested with the fee of the lands immediately on the delivery of the instrument, therefore there was never any seizin in the wife after coverture, if she ratified the same after arriving of full age.

It is contended by the appellant, that the wife never did ratify the marriage agreement, but on the contrary repudiated the same

and assumed entire control of her estate, both real and personal as if the articles had no existence. Her infancy being conceded it was necessary and incumbent upon the children to establish as a fact that on arriving at majority their mother did affirm the same, otherwise their father on the death of their mother had a vested estate by curtesy in all the lands embraced in the marriage articles. If such an estate became vested in the husband the same has been transferred to his assignees for the benefit of his creditors, and he was entitled in his own right to the use, rents and profits thereof, from the death of Mrs. Hotchkiss up to the time of making the assignment. The assignees representing the creditors stand in the place of the assignor, and in their interest may insist on a recognition of all his property rights, as they existed at the time of the assignment, as against the claim of the children.

It has not been claimed before us that the appeal by the bank creditors, does not bring up for review any error in the accounting which affects their interest. The action may be considered and has been so regarded, as in the nature of a bill of interpleader, to adjust and determine the rights of creditors as between themselves, to the funds and assets in the hands of the assignees.

The deed of an infant, when intended as a grant, is not void but only voidable. It may be avoided by an infant when he attains his age and by those who are privy in blood or estate, but it passes a title which a stranger is never permitted to impeach. If there be any adult parties to the grant or contract, it is binding on them so long as it remains executory and is not rescinded by the infant. (2 Kent's Com., 232–236; *Dominick* v. *Michael*, 4 Sandf., 419; *Bool* v. *Mix*, 17 Wend., 119.)

Doubtless, and we so hold for all the purposes of this case, that the affirmative of this question is with those who claim a ratification. We are satisfied with the decision of the referee on this question, and believe with him that the intention of the wife to affirm and abide by the terms of the marriage agreement and to uphold the trust created for her own benefit, is manifest, and to hold to the contrary would defeat her intention concerning the management and disposition of her estate, and thwart her purpose of preserving and securing to her children her estate as the same existed at the time of the execution of the marriage settlement.

It is not disclosed by the evidence that she ever did by any utterances on her part condemn the ante-nuptial agreement, or expressed any dissatisfaction therewith. The fact of the most significance, indicating disaffirmance, is that she never surrendered possession of the lands to the trustee, and she and her husband occupied the premises, enjoyed the use, rents and profits, and managed the same independent of any direct interference or supervision by the trustee. In this connection, however, should be mentioned, as indicating that Mrs. Hotchkiss, as well as the trustee, considered the articles as continuing in force, the circumstance that each year she executed and delivered to the trustee a receipt indorsed on the original articles, in the following words : "Received of Willard Wells, payment in full for the use and occupation of the property described in the within instrument, together with all the rents, profits and income of the same to this date." The rents and profits belonged to the wife in her own right, and in view of the fact that the real estate consisted of farm lands, it was a very natural arrangement for the interested parties to make, that the wife should enjoy the possession instead of requiring the trustee to let and lease the same and pay over the awards to the beneficiary. We can well believe that such was the most wise and prudent course to take, for the purpose of securing to Mrs. Hotchkiss and her family, the largest income from the property.

In her will, the testatrix, refers to the marriage articles with so much particularity, and the recitals are such that it is manifest she never did disaffirm the same, and at the time of making the will regarded them as in full force and valid.

The ratification of the marriage articles being well established, it follows as a matter of law, that the husband had no estate by the curtesy in the land embraced therein.

In stating the account between the assignor and his children, the former was charged with the personal estate owned by Mrs. Hotchkiss at the time of the execution of the articles, amounting in the aggregate to $11,000, which sum came to his hands as executor, on the death of Mrs. Hotchkiss. The appellants insist that this item should be rejected, for the reason that all the personal estate of the wife became the property of the assignor on and after the

marriage and that his right thereto, as the husband of the testatrix, was not affected by the ante-nuptial agreement.

It is therein recited, as one of the terms of the treaty for the intended marriage, that all the personal estate of the intended wife should be settled and reserved for her sole and separate use for her natural life, and that she should have the income thereof, and that after her death it should be and belong to her next of kin, reserving, however, to herself the power to dispose of the same by a last will and testament, to and for the benefit of her children, in such shares and proportions as to her should seem meet and proper. This recital is followed by a covenant on the part of the husband that in consideration of the intended marriage he would at all times thereafter join and concur with his intended wife in all such acts, deeds, assignments and assurances, as should in law be found necessary to settle all the personal estate of his intended wife in the trustee, upon the trust, and for the uses and purposes therein mentioned. Mrs. Hotchkiss died without any further conveyance or assurance of title being executed by herself or her husband to the trustee. This covenant on the part of the husband is founded upon a good consideration and is binding upon him, as' marriage is in law a valuable consideration and is as effective as money. (*Bradish* v. *Gibbs*, 3 Johns. Ch., 550.) The trustee could have at any time during the life of Mrs. Hotchkiss, compelled a specific performance of this covenant on the part of the husband. Upon the death of their mother the children, as her legatees under the will, in equity became the owner of the personal property embraced within the terms of the marriage agreement, although their father never made a formal assignment or release to the trustee. An intended husband may by a mere agreement, simply executory in terms, if founded on a good consideration, release and surrender up all his interest in the personal property of his intended wife. It is a general rule that equity will execute marriage articles, at the instance of all persons who are within the influence of the marriage consideration, the same as if there had been a complete conveyance. (*Bradish* v. *Gibbs*, 3 Johns. Ch., 550 ; *Wadhams* v. *Am. Home Miss. Society*, 12 N. Y., 422.)

This item of $11,000, was therefore properly charged to the assignor as a fund belonging to the children, whether it came to

his hands directly from the trustee as part of the trust fund, or was paid over directly to the assignor by the original debtors, who owed the same to Mrs. Hotchkiss, prior to her marriage.

At the time of the death of the testatrix she was seized of lands and possessed of some personal property, the title of which was acquired by her after the execution of the marriage agreement. A question is presented by an exception taken to the findings, by the appellants, whether such property was devised and bequeathed by her last will and testament. If it was not, then the assignor had an estate by curtesy in the lands, and under the statute of distributions was entitled to the personal estate. It is contended by the appellants that the will is but an execution of the power, and that the testatrix did not intend by that instrument, to make a disposition of such property as she might own and possess at the time of her death.

After referring to the ante-nuptial agreement by a reference thereto which clearly identifies that instrument, and declaring that she did execute the same prior to her intermarriage, and reserved to herself the privilege of giving and devising her estate as therein described and referred to, follows the devising paragraph of the will, which is in these words : " Now, therefore, I, the said Lucretia Hotchkiss, do make, publish and declare this my last will and testament, in the manner and form following, that is to say : First. I give, devise and bequeath unto such child or children as I shall leave or have living at the time of my decease, and to their heirs and assigns forever, all my real and personal estate of every name and nature wheresoever situated, and more particularly described in the instrument hereinbefore referred to."

In construing wills, deeds and other written instruments, resort is had to a variety of legal rules for the purpose of aiding in their interpretation, but all the rules are subordinate to that primary one which requires that every instrument shall be construed according to the intention of the parties. The ordinary rule is that general words are limited in their operation by those which are more particular and specific, unless from all the parts of the instrument it can be discovered that they were used by mistake or misapprehension, and that it was not the intention of the party executing the instrument to narrow and limit the effect of

the words possessing the broader meaning. (*Platt* v. *Lott*, 17 N. Y., 478.)

The relation or position in which the words are placed, in connection with the general words or phrases as used in the writing, often aid in determining the purpose for which they were used. This is significantly so when they are placed in a separate paragraph at the conclusion of the instrument. When thus inserted it is a general rule to regard them as intended to qualify something that has been previously expressed. When the general words are followed immediately, and in the same sentence, by the particular ones, having a special and limited meaning, as they do in this instance, then it may be reasonably concluded that some of the words have been used by mistake and without a full comprehension of their meaning, and it is the office of interpretation to determine which set of words shall prevail, as expressing the intention of the party. We have experienced some difficulty in ascertaining what was probably the real intention of the testatrix on this subject and the construction which should be given to the will. Our conclusion is that the will was intended to be an execution of the power reserved to the testatrix, and nothing more ; that the words of limitation, limiting and confining the operation of the will to the property described in the ante-nuptial agreement, were used understandingly and not by mistake, as they form and are a part of the sentence describing the property devised and bequeathed by the will.

In cases of doubt the preamble or introductory clause of the will may be resorted to with a view of ascertaining the intention of the testator. This being read in connection with the clause describing the property, it seems quite certain that the sole purpose of the will was to execute the power reserved to the testatrix. The words "now, therefore," standing at the head of the devising clause; and being inserted immediately after the preamble, have in this instance a particular significance as indicating the purpose of the testatrix, and were evidently used as a declaration on her part, that by the instrument which she then executed she intended to prepare and publish a last will and testament in the form required by the ante-nuptial agreement, and to execute the power reserved in the same. As bearing upon the question of intention some weight should be given to the circumstances that the property owned by the testatrix

at the time of her death was acquired after the execution and publication of the will. As Mrs. Hotchkiss died intestate as to all her property, both real and personal, acquired after the date of the antenuptial agreement, her husband was entitled to an estate by the curtesy in the lands, and to all of the personal property. (*Barnes* v. *Underwood,* 47 N. Y., 351; *Hatfield* v. *Sneden,* 54 id., 287; *Leach* v. *Leach,* 21 Hun, 381; Laws of 1867, chap. 782.) The account, as it is stated between the assignor and his children, must be corrected accordingly.

The testatrix left her surviving five children, all of them minors. Nathan, one of them, died in 1861, under age, unmarried and without issue. By the will the real and personal property was devised to and among the five children in equal proportions, to the exclusion of the husband, and upon the condition that if either of them should die before they arrived at the age of twenty-one years, and without issue living at the time of such death, then the share or estate of the child so dying should vest in and belong to the survivor or survivors of such deceased child or children.

In ascertaining the sum due from the assignor to his children, the referee regarded the remainder over as valid, both as to the real and personal estate, and charged the assignor with the rents and profits of the land after the death of the minor child, and with the entire amount of Nathan's share of the personal estate. The creditors objected to these allowances upon the ground that under the power reserved to the testatrix she was not authorized to impose a conditional limitation upon the share allotted to either of the children, and the testatrix having selected them, as she was authorized to do, as her devisees or appointees under the power, they were entitled to an absolute fee in the land, and the testatrix had no power to limit or qualify the same, as she sought to do, by providing for the remainder over, on the happening of the contingency mentioned in the will. The power reserved to the testatrix in the articles seems to be broad enough to justify the limitation provided for in the will. There is no positive direction that the children, who might be selected by the testatrix as the donees of the estate left at her disposal, should take the same free and clear of all conditions and be vested with an absolute fee. It was one of the declared objects of the ante-nuptial agreement, to secure

to the testatrix the privilege of disposing of her property by a last will and testament, and the only restraint placed upon the testatrix, was as to the class of persons to whom it should be given.

The terms of the power so far as they relate to the real estate, authorize the limitation over in favor of the survivors. The reservation is to give and to devise the lands to any one of her children or to any one or more of them, " in such share and proportions as to her should seem meet, such gift and devise to take effect, and the estate so given and devised to vest in the devisee as the same should be given and devised to them."

The testatrix under these provisions of the articles of settlement could have excluded the deceased child altogether from sharing in the property. By a last will and testament the testatrix was authorized to make the same disposition of the property to and among her own issue, as she could have done in and by the articles, by a provision inserted therein, at the time that property was conveyed to the trustee.

In Sugden on Powers the rule on this subject, as established by the English cases, is stated as follows : " A power to appoint a fund in such proportions as a party shall think fit, implies that he may apportion it out in such manner as he pleases, consequently he may give an interest for life in a particular share to one child, or limit the capital of the same share to another, or even go so far as to limit to a third child upon a contingency, provided he doles out the whole in this various way among all the children only. The power does not require that he should distribute it in gross sums and give each child an absolute interest in that gross sum, for such a power enables the gift of particular interests and the apportionment of such interests ; and a general power to apportion lands receives the same construction, therefore life estates or rent charges may in like manner be given to any of the children." (2 Sug. on Powers, 272, chap. 15, § 2 ; *Alexander* v. *Alexander*, 2 Ves., 640.)

The subject is not much discussed in this State, and I am unable to find any decision in conflict with this epitome of the cases. An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of the power takes under the authority and under the grantor of the power,

whether it applies to real or personal property, in like manner as if the power, and the instrument executing the power, had been incorporated in one instrument. (4 Kent's Com., 337.) As to the real estate there was no suspension of the power of alienation in contravention of the provisions of the statute upon the subject. The period during which the absolute right of alienation may be suspended by any instrument in the execution of a power must be computed, not from the date of such instrument, but from the time of the creation of the power. (1 R. S., 737, § 128.)

The power of alienation was only suspended during the life of the testatrix, and upon her death the title vested in her children, a contingent remainder in fee being created on a prior remainder in fee, as provided in the sixteenth section of the article of the Revised Statutes, relating to the creation and division of estates. (*Manice* v. *Manice*, 43 N. Y., 382.)

The language of the will indicates an intention on the part of the testatrix, on the death of either child under age without issue, to give the share and portion of such deceased child to the surviving children in fee and in severalty, and not subject to a further remainder in case another child should die under age without issue.

The provision of the will, creating the remainder, follows the devise to the children, and is as follows: " Provided, nevertheless, that in case either or any of my children living at my decease, shall die before he, she or they, shall arrive at the age of twenty-one years, and without issue living at the decease of such child or children, *the share or estate of the child or children so dying shall vest and belong to, and I give and devise the same to the survivor or survivors of such deceased child or children.*"

This is an express declaration on the part of the testatrix, that upon the happening of the contingency provided for, the share or estate of a deceased child, shall vest in the survivor or survivors. Upon the death of the mother each child was entitled to the possession and enjoyment of his share in severalty.

In giving construction to wills, an illegal intent on the part of the testator is not to be inferred. If there be equal ground for inferring a lawful intent, such inference will be accepted.

As the provisions of this section of the statute do not apply to personal property, it was necessary that the same should vest

somewhere upon the death of the testatrix, as she was the only person in being at the time of the creation of the power. (*Manice* v. *Manice*, *supra*.) The bequest of the personal estate, subject to a remainder over the same as the real estate, was therefore void, and the title to the same vested upon the death of the mother in the children absolutely.

The rents and profits on Nathan's share of the real estate, after his death, were properly chargeable to the assignor, but his share of the personal estate on his death belonged to the father, and should be stricken from the account as an item against him.

The rents and profits of Nathan's share in the real estate from the death of his mother, to the time of his own death, were his own absolute property and did not follow the title to the real estate, and they should not have been charged up against the assignor, as they belonged to him under the statute of distributions.

From the time of the death of the mother the minor children lived with their father, and were maintained and educated by him at his own cost and expense. After they severally arrived of age; in particular, Fannie and Alice continued to reside with their father. The former attained her majority in 1873, and the latter in 1876. The referee refused to credit the father with the expense of maintenance and education of the children, and to this ruling the defendants excepted.

We concur in the decision of the referee as to the support and education during minority, and without taking the time to mention our reasons we cite the following authorities in support of our conclusion: *In Matter of Kane* (2 Barb. Ch., 375); *Carmichael* v. *Hughes* (6 Eng. Law and Eq., 71); *Wilkes* v. *Rogers* (6 Johns., 566); *Ex parte Bond* (2 Mylne & Keen., 440); *Smith* v. *Goertner* (40 How., 187).

As to the moneys which were advanced to some of the children, particularly Fannie and Alice, after they became of age, to complete their education, to provide for their wardrobes and to meet traveling expenses, they should be credited to the assignor as sums advanced to them out of the money in his hands as their guardian and trustee. Such expenditures do not come within the rule of law requiring parents to educate and support infant children, and it seems entirely just and equitable, in view of the features and

circumstances of this case, to credit the assignor's account with all such items. There is nothing disclosed in the evidence fairly establishing that these moneys were intended as gifts on the part of the father to his children.

We have examined all the other items, those allowed as well as those disallowed, to which exceptions were taken by the appellants and do not find any error.

The judgment as modified affirmed, the costs of all the parties to this appeal to be paid out of the funds in the hands of the assignees, the form of the judgment to be settled by Justice BARKER.

HARDIN, J., concurred; SMITH, P. J., not sitting.

Judgment modified as stated in the opinion, and as modified affirmed, with costs of all the parties to the appeal to be paid by the assignees out of the fund. Judgment to be settled before Mr. Justice BARKER, on notice.